545 So.2d 400 (1989)
Christopher HATCHER, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 88-1878.
District Court of Appeal of Florida, First District.
June 9, 1989.
Brent R. Taylor, King Disability Law Center, Nova University for the Study of Law, Ft. Lauderdale, for appellant.
Scott D. Leemis, Dept. of Health and Rehabilitative Services, Jacksonville, for appellee.
Kenneth L. Hosford, Tallahassee, for amicus curiae.
ERVIN, Judge.
This is an appeal from a final order rendered by the Department of Health and Rehabilitative Services (HRS) determining that a trust established for the benefit of appellant, a mentally incompetent person, by Guard, Inc. (Guard), appellant's legal guardian, was a "medicaid qualifying trust" (MQT) and terminating appellant's medicaid benefits. We agree that the trust *401 is a MQT and, as such, was properly considered in assessing appellant's ineligibility for continuing medicaid. We therefore affirm the order.
Christopher Hatcher, a 30-year-old mentally retarded male, is a patient at Eagle Watch Cluster in Daytona Beach, an intermediate care facility for the mentally retarded. Appellant's father, Chester L. Hatcher, acted as appellant's legal guardian until his death. Prior to his father's death, appellant received benefits in the amounts of $261.00 per month from the Veterans' Administration and $350.00 per month in Supplemental Security Income benefits. Upon the father's death, appellant became entitled to annuity benefits under the Retired Serviceman's Family Protection Plan (RSFPP),[1] however, because appellant was mentally incompetent and had no legal guardian at that time, the funds were not immediately made available to him. Guard[2] was eventually appointed appellant's legal guardian and thereafter, on behalf of appellant, Guard completed the necessary paperwork to obtain the annuity benefits. While awaiting approval of the application for the benefits, Guard, with court approval, established a discretionary support trust for the benefit of appellant. The trust documents purported to create an umbrella trust agreement with the stated purpose "to receive and disburse funds available to CHRISTOPHER MICHAEL HATCHER through the Retired Servicemen[']s [F]amily Protection Plan (RSFPP), as a supplement to, and not a substitute for, any funds received from any other [public] agency... ." The trust was eventually funded with the RSFPP annuity. Thereafter, HRS canceled appellant's medicaid benefits, because his available resources  $10,780.00 in trust assets and monthly annuity benefits of $386.00  exceeded the agency resource standard of $1,900.00. Additionally, appellant's monthly income  $997.00  was found to exceed the agency's income standard of $918.00. Appellant unsuccessfully appealed the HRS decision to the Office of Public Assistance Hearings; hence, this appeal.
The determinative question in this case is whether the trust established by Guard is a MQT. Federal law defines a MQT as follows:
[A] "medicaid qualifying trust" is a trust, or similar legal device, established (other than by will) by an individual (or an individual's spouse) under which the individual may be the beneficiary of all or part of the payments from the trust and the distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion with respect to the distribution to the individual.
42 U.S.C.S. § 1396a(k)(2) (Law. Co-op. Supp. 1988). MQT treatment is intended to apply to "distributions from grantor trusts, not distributions or principal from non-grantor trusts, such as those established by parents for children." 132 Cong.Rec. H11432 (daily ed. Oct. 17, 1986) (§ 19 COBRA Technical Corrections and Clarifications Relating to The Medicaid Program (Section 9435), Conference agreement (a)) (emphasis added). If a trust qualifies as a MQT, the maximum amount of payments permitted under the terms of the trust to be distributed to the grantor, assuming the full exercise of discretion by the trustee, is deemed to be available to the grantor and may be considered in assessing medicaid eligibility. 42 U.S.C.S. § 1396a(k)(1) (Law. Co-op. Supp. 1988).
Florida's version of the MQT is contained in Rule 10C-8.0182(1) of the Florida Administrative Code (1989), providing:

*402 If any individual who applies for or is receiving Medicaid assistance, or the spouse of such an individual, established or establishes a revocable or irrevocable trust, the trust is counted as an asset and as income available to the beneficiary. If the trust value combined with other income or assets exceeds the established income and asset levels, the individual is not eligible for Medicaid. This provision applies to trusts in existence regardless of the purpose and reasons for the establishment of the trust.
Like its federal counterpart, Florida's MQT treatment is likewise aimed at grantor trusts. Non-grantor trusts, such as umbrella trusts, established by family members other than the beneficiary of the trust are expressly exempted from MQT treatment in Florida.[3]
It is appellant's position that the trust established by Guard is not a grantor trust and is therefore excepted from MQT treatment under both Florida and federal law, because the trust was established by Guard, an individual other than the beneficiary. We cannot agree. Although there is no doubt that the trust in question would have been exempted from eligibility considerations if it had been created by appellant's father during his lifetime, the fact remains that the trust was not created until after the father's death and after appellant became entitled to the benefits. To accept the argument that Guard stepped into the shoes of appellant's deceased father for the purpose of establishing an umbrella trust after the father's death would allow Guard to create an estate plan post-mortem.
As for Guard's argument that it is a different individual from the beneficiary of the trust, we have no disagreement. However, one need only look to Florida guardianship law[4] to see that a legal guardian has the primary duty to "protect and preserve the property [of the ward] and to invest it prudently... . [and] [a]t the termination of the guardianship, to deliver the assets of the ward to the person lawfully entitled to them." §§ 744.377(1)(a), (c), Fla. Stat. (1987) (emphasis added); 28 Fla. Jur.2d Guardian and Ward §§ 43, 51 (1981). Although Section 744.441(19), Florida Statutes (1987), may authorize a guardian, upon court approval, to create a revocable or irrevocable trust, the trust is to be created from "property of the ward's estate." That Guard was merely managing property already belonging to appellant is also reflected in the trust document itself, wherein it was stated that the trust was created to "provide a means for the management of any and all pension or inheritance benefits which the beneficiary [appellant] may now or in the future be entitled to... ." Thus, we conclude that Guard was merely acting in place of its ward  appellant  by managing assets which appellant had become entitled to upon his father's death. Guard's subsequent actions in creating a trust and restricting the availability of the funds, while obviously in appellant's best interest, should not be interpreted as establishing a non-grantor trust, exempt from medicaid eligibility considerations. This is so, because recipients of public assistance should not be able to avoid the spirit of the law by use of a guardian.
Thus, we conclude that the trust in question was properly determined to be a MQT, which was then correctly attributed to appellant as an asset and income for purposes of determining his continued eligibility for medicaid. Because appellant's resources and income then exceeded the standards for eligibility, HRS properly terminated appellant's medicaid benefits.
AFFIRMED.
JOANOS, J., and PEARSON, TILLMAN, (Ret'd), Associate Judge, concur.
NOTES
[1] The Retired Serviceman's Family Protection Plan is a purely voluntary annuity program which allows members of the armed forces to establish an annuity for the benefit of specified beneficiaries by reducing the amount of retirement pay to which the member may become entitled as a result of his service in the armed forces. See 10 U.S.C.A. §§ 1431-46 (West 1983 & Supp. 1989).
[2] Guard, Inc., is a corporate guardianship program established through a contract between HRS and the Association of Retarded Citizens of Florida to provide legal guardians for adult developmentally disabled persons.
[3] See Rule 10C-8.0182(2)(a) of the Florida Administrative Code (1989).
[4] Chapter 744, Florida Statutes (1987).