**PHILLIP W. BARHAM**, by his best friend and legal guardian, **JAY W. BARHAM**, Appellant–Appellant, v. **WINONA RUBIN**, Director of the Department of Human Services, State of Hawaii, Appellee–Appellee

NO. 14807

(CIV. NO. 89–3843–12)

AUGUST 19, 1991

LUM, C.J., PADGETT, HAYASHI, WAKATSUKI, AND MOON, JJ.

OPINION OF THE COURT BY WAKATSUKI, J.

At the age of 34, Phillip W. Barham suffered traumatic brain injury which left him permanently disabled and unable to care for himself. Jay W. Barham, Phillip's father, filed a personal injury lawsuit in Colorado on Phillip's behalf. The suit was settled for $310,000 in cash and an annuity which created an income stream of $3000 a month for life.

A Colorado probate court approved the settlement pursuant to the creation of a trust for Phillip. In establishing the irrevocable trust, the Colorado probate court deemed itself the settlor and Jay Barham the trustee. Pertinent provisions of the trust agreement provided, that although the trustee had discretion to use the income and principal for any of Phillip's needs, trust funds were not to be used to supplant or replace any public assistance benefits available to Phillip. As a matter of fact, the trustee is obligated to take whatever steps necessary to continue public assistance eligibility of Phillip.

Prior to the settlement of the lawsuit and creation of the trust, Phillip had applied for and received financial, medical, and food stamp assistance in Hawaii. Once the trust began receiving the $3000 monthly income, the department of human services (DHS) notified Phillip that he was no longer eligible for medicaid benefits because his income exceeded the allowable medicaid limit.

A fair hearing officer concurred with DHS as did the circuit court acting in an appellate capacity. Phillip appeals. We affirm.

## II.

Whether Phillip is eligible for medicaid benefits depends on whether the trust fund amounts are considered "resources" to be used for his support and maintenance. This determination turns on whether the trust is a "medicaid qualifying trust" (MQT). If it is an MQT, then the $3000 per month income stream must be "spent down" before Phillip becomes eligible for medicaid assistance.

[A] "medicaid qualifying trust" is a trust or similar legal device, established (other than by will) by an individual (or an individual's spouse) under which the individual may be the beneficiary of all or part of the payments from the trust and the distribution of such payments is determined by one or more trustees who are permitted to

exercise any discretion with respect to the distribution to the individual.

42 U.S.C.A. § 1396a(k)(2) (West Supp. 1990).

## III.

Barham argues that the trust in question is not an MQT because it was not established by Phillip himself or his spouse. In support of his argument, Barham urges this court to adopt the holding of the Colorado federal district court in *Miller v. Ibarra*, 746 F. Supp. 19 (D. Colo. 1990). There, the court held that trusts created by Colorado probate courts to protect the assets of incompetents were not MQT's because they were established by a court and not by the individual who was also the beneficiary of the trust. Although the circumstances of the creation of the trusts in *Miller* are substantially similar to this case, there are different factors and considerations involved which dissuade us from adopting the *Miller* holding.

The *Miller* opinion involved four consolidated cases. In each case a Colorado probate court had created a trust to protect the incompetent's assets. Each trustee had full discretion to disburse funds up to a level $20.00 below the applicable medicaid maximum income eligibility level. The trust documents provided that trust funds could be used only to supplement other benefits received by the beneficiary, not to supplant them. The question was whether these trusts were MQTs. The court held they were not.

The opening paragraph of *Miller v. Ibarra*, states:

The legal representatives of four aged, infirm and mentally incompetent women commenced this lawsuit in an effort to extricate their charges from the "Utah Gap." That is the popular nomenclature for a "Catch–22" in state health care policy that deprives many senior citizens

of Medicaid payments for nursing home expenses to which they are otherwise entitled. When their incomes are too low to enable them to pay their own nursing home costs, but too high to qualify for Medicaid benefits, these claimants are ensnared in a trap created by the interaction of highly technical federal and state statutes and regulations. *They are not allowed to pay as much as they can, and have Medicaid pay the balance, but instead are totally disqualified for any Medicaid assistance.*

*Id.* at 20 (emphasis added).

Unlike Colorado, Hawaii participates in a federal program which provides funds to bridge the "Utah Gap." Under this program, the medically needy are not totally disqualified for medicaid assistance if their income and assets exceed the eligibility limit. Rather, they become eligible when they incur expenses that reduce their income to the eligibility level. In other words, when Phillip "spends down" his income to the eligibility level, he will thereafter be eligible for medicaid benefits for excess medical costs.

Although the *Miller* court did not explicitly state that the result would be different had Colorado participated in such a program, it did take note of such a program and the fact that Colorado was one of only 15 states which had not elected to participate in the program. *Id.* at 34.

Two other factors distinguish the *Miller* trusts from Barham's trust. In *Miller*, the trustees' discretion to disburse trust assets was limited to an amount $20.00 less than the medicaid maximum income eligibility level. Thus, even if they were found to be MQT's, the claimants would still be eligible for medicaid. No such limitation is found here.

Second, each of the *Miller* trusts provided that trust assets remaining after the death of the beneficiary were to be transferred to the Colorado department of social services. In this case, trust assets remaining after Phillip's death will go to his heirs.

IV.

The purpose of medicaid is to provide assistance to those whose income and resources are inadequate to meet the costs of necessary medical services. 42 U.S.C. § 1396. In enacting the statutory provisions governing MQT's,

> Congress sought to prevent wealthy individuals, otherwise ineligible for Medicaid benefits, from making themselves eligible by creating irrevocable trusts in order to preserve assets for their heirs.

*Miller v. Ibarra*, 746 F. Supp. at 34.

> We hold that Barham's reading of the statute is too narrow.

> This court's primary duty in interpreting and applying statutes is to ascertain and give effect to the legislature's intention to the fullest degree.

*National Union Fire Ins. Co. v. Ferreira*, 71 Haw. 341, 345, 790 P.2d 910, 913 (1990).

> To permit Barham to collect public assistance benefits while he is receiving and potentially accumulating $3000 a month, all of which may go to his heirs, would violate the spirit and intent of the medicaid laws.

*Hatcher v. Department of Health and Rehabilitative Services*, 545 So. 2d 400 (Fla. Dist. Ct. App. 1 Dist. 1989), was a similar case decided by a Florida appellate court. Hatcher was an incompetent and upon his father's death, he became entitled to annuity benefits under the Retired Serviceman's Family Protection Plan (RSFPP). Hatcher's guardian established an umbrella trust to receive and disburse RSFPP funds. The trust document stated its purpose was to receive and disburse funds available to Hatcher through RSFPP "as a supplement to, and not a substitute for, any funds received from any public agent[.]" The guardian in that case protested the department's determination that the trust was an

MQT. The guardian argued that it, not Hatcher, established the trust, therefore it was not a trust established by the individual for his own benefit.

The appellate court affirmed the department's decision, pointing out that the guardian "was merely managing property already belonging to [Hatcher]." *Id.* at 402. The court stated:

> [The guardian's] subsequent actions in creating a trust and restricting the availability of the funds, while obviously in appellant's best interest, should not be interpreted as establishing a ***non–grantor trust***, exempt from medicaid eligibility considerations. This is so, because recipients of public assistance should not be able to avoid the spirit of the law by use of a guardian.

*Id.* at 402 (emphasis in original).

The fact that the trust in ***Hatcher*** was established by a guardian, and in this case by a probate court, as settlor, is inconsequential. In both cases, the trust property already belonged to the beneficiary.

We concur with ***Hatcher***, therefore, we hold that trust income and assets are "resources" which Phillip must "spend down" before becoming eligible for medicaid assistance.

Affirmed.

*James Talmadge Countiss* (*B. Regina Green* with him on the briefs, of Green & Countiss) attorneys for appellant–appellant.

*G. Cher Foerster* (*John Campbell, Jr.* with her on the brief), Deputy Attorneys General, for appellee–appellee.