William **STRIEGEL**, Appellant,

v.

**SOUTH DAKOTA DEPARTMENT OF SOCIAL SERVICES**, Appellee.

No. 18480.

Supreme Court of South Dakota.

Argued Feb. 14, 1994.

Decided April 20, 1994.

Dennis H. Hill of Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for plaintiff and appellant.

Mark W. Barnett, Atty. Gen., Joan P. Baker, Asst. Atty. Gen., Pierre, for defendant and appellee.

HENDERSON, Justice.

*PROCEDURAL HISTORY/ISSUE*

This is a case of first impression in South Dakota.

After the South Dakota Department of Social Services (DSS) rejected his application for Medicaid, appellant William Striegel (William) received an "Administrative Fair Hearing" on July 8, 1992. The hearing examiner upheld appellee DSS' decision, as did the trial court on appeal. William asks on appeal to this Court if his trust is available for his use and thereby, a Medicaid Qualifying trust (MQT) which disqualifies him from receiving Medicaid? We find that William is the beneficiary of a MQT. We affirm.

## FACTS

When he was born in 1946, William suffered brain damage and never progressed beyond the mental age of 3½; he is mentally incompetent. Since 1968, this Elgin, North Dakota native has been a resident of the Black Hills Workshop, an institution for the mentally handicapped, in Rapid City. His father died intestate that same year, and William inherited approximately $5,400 in cash and 240 acres of land in North Dakota. Thereafter, a North Dakota court appointed William's mother, Ida, as his guardian.

Although Ida kept a record of William's assets, she did not submit any accounting report until asked for one in 1991. According to her report to the North Dakota court, which covered 1969 through 1990, William's fiscal resources included land rentals and sales [1], gas and oil lease payments, interest, Social Security ($278.00/month), and his earnings at the Black Hills Workshop (less than $50.00/month) for a total of $51,853.43.[2] In July of 1992, that amount had fallen to $37,473.95.

In 1991, a North Dakota court, apparently at the request of William's family, approved the placing of the guardianship funds into a trust, naming Ida as both settlor and trustee with William as beneficiary. Under the trust, any expenditures made by the trustee were to be used solely for the purpose of providing William with services *not* provided by his residential facility or by any governmental unit. Upon William's death, the trust remainder passes to his brother, Tom. Because of his access to this trust, DSS ruled William ineligible for Medicaid. We agree.

## DECISION

■ This Court now decides if an inter vivos discretionary trust fund is, according to statute, an "available" asset which would disqualify William from receiving Medicaid. Our review is de novo and is confined to a question of law. It is not in any way restricted or controlled by the agency's ruling or the circuit court's decision. *Northwestern Bell v. PUC,* 467 N.W.2d 468, 469 (S.D.1991); SDCL 1-26-37.

■ Medicaid is a federal program administered by the states and provides medical financial assistance to needy persons whose income and resources are insufficient to meet the expenses of health care. *Harris v. McRae,* 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). In determining eligibility for this program, per 42 U.S.C. § 1396a(a)(17), states are required to assess financial need only on resources *available* to the individual:

> A state plan for medical assistance must ... include reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan which ... provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the [Secretary of Health and Human Services], available to the applicant or recipient[.]

42 U.S.C. § 1396a(a)(17). Federal regulations state, "[R]esources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance." *Missouri Div. of Family Serv. v. Wilson,* 849 S.W.2d 104, 107 (Mo.App.1993) (citing 45 C.F.R. § 233.-20(a)(3)(ii)(D)).

Should an applicant be the beneficiary of a MQT, as defined by 42 U.S.C. § 1396a(k)(2), the applicant is deemed to have *available* resources which exclude him from Medicaid coverage.

> For purposes of this subsection, a "medicaid qualifying trust" is a trust, or similar legal device, *established (other than by will) by an individual (or an individual's spouse)* under which the individual may be the beneficiary of all or part of the payments from the trust and the distribution of such payments is determined by one or

---

**1.** In 1986, Ida sold William's land to William's brother, Tom Striegel, for $18,000. The sale was court-approved.

**2.** However, the total "Assets in Guardianship" was reported as $54,882.88. The discrepancy could be credited to Ida's claim that she made contributions to the guardianship account.

more trustees who are permitted to exercise any discretion with respect to the distribution to the individual.

§ 1396a(k)(2) (emphasis supplied). Under the authority of § 1396a(a)(17) and SDCL 28–6–1, DSS adopted a similar MQT definition for South Dakota. ARSD 67:16:20:18.01 provides:

> A medicaid-qualifying trust is a nontestamentary trust or similar legal device *established by* the individual or his spouse or *someone acting on his behalf* that uses the individual's or spouse's funds. Under the terms of the trust, the individual may be the beneficiary of all or part of the payments from the trust or similar legal device and the distribution of payments is determined by one or more trustees who are permitted to exercise discretion with respect to the distribution to the individual. [Emphasis supplied.]
>
> This section applies regardless of the purpose for which the trust was established.

Under *Kegel v. State*, 830 P.2d 563, 566 (N.M.App.1992), "[T]he only kind of trust to which Section 1396a(k)(2) expressly extends is one created. by the beneficiary or the beneficiary's spouse." We disagree with this rationale. § 1396a(a)(17) instructs Medicaid states to set reasonable standards for determining eligibility. *See Matter of Leona Carlisle Trust*, 498 N.W.2d 260, 263 (Minn.App. 1993) ("Participating states may develop their own standards for determining eligibility for Medicaid"). South Dakota's standard has not been shown to be unreasonable.

■ William's assets were placed in a discretionary trust naming William as the beneficiary. A discretionary trust is a trust which gives the trustee complete discretion to distribute all, some, or none of the trust income or principal to the beneficiary, as the trustee sees fit. *Lineback by Hutchens v. Stout*, 79 N.C.App. 292, 339 S.E.2d 103, 106 (1986); Restatement (Second) of Trusts § 155 (1959); Bogert, *The Law of Trusts and Trustees* § 228 (rev. 2d ed. 1979). This allows the trustee complete and uncontrolled discretion to make allocations of trust funds if and when deemed appropriate. *Carlisle*

*Trust*, 498 N.W.2d at 264; *First Nat. Bank of Maryland v. Dept. of Health*, 284 Md. 720, 399 A.2d 891, 894 (App.1979).

According to Article V of William's trust, "the trustee shall expend such sums of the principal of the trust as he in his sole discretion deems advisable ... It is expressly understood that the Trustee is under no obligation to make any expenditures" to William. Apparently, Ida has the discretion to withhold payments and impoverish William, thereby allowing him to qualify for Medicaid. Because of this "discretion," William is the beneficiary of a seemingly unavailable discretionary trust.

DSS contends that William's trust does constitute a resource available to him in excess of the maximum Medicaid qualifying amount of $2,000.00.[3] *See* ARSD 67:16:20:16. William's mother/trustee is "merely managing property already belonging to [William]." *Hatcher v. Dept. of Health and Rehabilitative Services*, 545 So.2d 400 (Fla.App.1989). Her total refusal to make any payments could constitute an abuse of trustee discretion as conflicting with the settlor's intent. Hence, DSS and the trial court concur that William is the beneficiary of a MQT and, therefore, ineligible for Medicaid.

It is William's contention that if these funds are declared "available," it would cause a rapid and total dissipation of his trust estate. *The Medicaid program is not to be used as an estate planning tool.* Congress enacted the MQT provision, § 1396a(k)(2), as an addition to the "provisions designed to assure that individuals receiving nursing home and other long-term care services under Medicaid are in fact poor and have not transferred assets that should be used to purchase the needed services before Medicaid benefits are made available." *Forsyth v. Rowe*, 226 Conn. 818, 629 A.2d 379, 385 (1993) (quoting H.Rep. No. 99–265, 99th Cong., 1st Sess. 71 (1985)).

Foreseeing a potential for abuse, *Forsyth* noted that one could place assets in an irrevocable discretionary trust paying him income for life until long-term medical became necessary. At that point, the trustee could

3. A person can keep $2,000.00 and be eligible for Medicaid.

exercise its discretion to withhold payments to the beneficiary, thus allowing the beneficiary to qualify for medicaid assistance while preserving assets for his heirs. *Forsyth,* 629 A.2d at 385. Anyone and everyone could become eligible for Medicaid under this thesis. Thereby, Congressional intent would be totally frustrated.

Such estate preservation was possible under § 1396a(a)(17); however, Congress closed the loophole. The maximum amount the beneficiary *could* receive from the trust, at the trustee's discretion, was deemed *available* to the beneficiary regardless of the amount actually distributed. 42 U.S.C. § 1396a(k); *Forsyth,* 629 A.2d at 385. Public assistance will be denied if the applicant has resources that are readily available.

"Congress sought to prevent wealthy individuals, otherwise ineligible for Medicaid benefits, from making themselves eligible by creating irrevocable trusts in order to preserve assets for their heirs." *Kegel,* 830 P.2d at 566 (quoting *Miller v. Ibarra,* 746 F.Supp. 19, 34 (D.Colo.1990)). We agree with that expression. Whereas William may not be a "wealthy individual," we do know, in the absence of the trust, he definitely would be ineligible and he would be unable to preserve the funds for his heirs.

The strength of William's arguments relies mainly upon cases involving testamentary trusts. *Miller,* William's federal authority with a fact scenario parallelling his own, is distinguishable on one key point: the trust was not used for estate planning. Upon the death of the beneficiary, the balance of the estate went to the State, not to the relatives. To permit William to receive Medicaid benefits while tens of thousands of dollars are sheltered in a trust violates the spirit and intent of the Medicaid program and is unjust to those who do not have access to supplemental funds yet desperately need the benefits.

Affirmed.

MILLER, C.J., and WUEST, SABERS and AMUNDSON, JJ., concur.