**In the Matter of Keith W. KINDT.**

**No. C9–95–1622.**

Court of Appeals of Minnesota.

Jan. 16, 1996.

Mark W. Haigh, Davenport, Evans, Hurwitz & Smith, Sioux Falls, for Appellant Keith W. Kindt.

Hubert H. Humphrey, III, Attorney General, William H. Mondale, Assistant Attorney General, St. Paul, for Respondent Commissioner of Human Services.

James O'Neill, Pipestone County Attorney, Timothy K. Anderson, Assistant County Attorney, Pipestone, for Respondent Pipestone County Family Services.

Considered and decided by PETERSON, P.J., and RANDALL and SHORT, JJ.

## OPINION

SHORT, Judge.

This matter involves a determination that Keith Kindt is financially ineligible for medical assistance (MA) due to the availability of trust assets. On appeal, Keith Kindt's former spouse and guardian, Kim Kindt (Kindt), argues the Commissioner of Human Services erred as a matter of law in concluding (1) the county's benefit termination letter complied with the notice requirements of the Due Process Clause, and (2) Keith Kindt's trust is an

available asset for purposes of determining MA eligibility.

## FACTS

On August 6, 1987, while watching a church-sponsored softball game in South Dakota, Keith Kindt was struck in the head by a baseball bat. As a result of internal hemorrhaging, part of his brain tissue died. He has undergone over a dozen surgeries, but remains incompetent to manage his affairs, suffers from behavioral problems, and requires medical attention 24 hours a day.

After her appointment as guardian of Keith Kindt's person and property, Kindt filed an action against the City of Sioux Falls, the church, and three individuals. In November 1991, Kindt settled her own claims, as well as those of her children and Keith Kindt. Under the terms of the settlement agreement, Kindt received $400,000 personally and another $300,000 as guardian of the Kindts' two children. Additionally, as Keith Kindt's guardian, she received a net settlement of approximately $262,000. Pursuant to S.D. Codified Laws Ann. § 30–29–43, Kindt petitioned for, and received, a South Dakota state court's permission to execute the settlement agreement in favor of her wards.

In accordance with Kindt's petition, the South Dakota court, as "grantor," executed an agreement creating an irrevocable trust:

[T]o provide KEITH W. KINDT extra and supplemental medical, health, and nursing care, * * * support, maintenance, education, rehabilitation, therapies, devices, recreation, social opportunities * * * over and above the benefits he otherwise receives as a result of his disabilities from any local, county, state or federal governmental agency * * *. It is the express purpose of the parties to use the trust estate only to supplement other benefits received by or on behalf of KEITH W. KINDT. * * * Nothing herein shall preclude the Trustee from purchasing those services and items which promote KEITH W. KINDT's happiness, welfare, and development * * * provided that the furnishing of such goods or services shall not be paid by the Trustee if in the judgment of

the Trustee such payments will jeopardize the financial assistance * * * it being the intent of all parties hereto that the trust be considered as a supplement to the benefits provided from [public and private] sources.

Prior to the settlement, Keith Kindt was moved from South Dakota to his parents' residence in Minnesota. Initially, Keith Kindt qualified for MA in Pipestone County. However, in March 1992, Kindt received a notice that, as of April 1, Keith Kindt would become ineligible for MA because Kindt had not provided the documentation required to assess continued eligibility for the program. On March 24, Kindt provided the desired information to Pipestone County. However, pending the review's outcome, the county terminated Keith Kindt's MA benefits as of April 1.

When Kindt checked on the review's status in May 1992, the county informed her in writing that the matter remained unresolved because the Attorney General's Office had assumed responsibility for the evaluation of Keith Kindt's settlement and had not completed its analysis. Later, in October 1992, Kindt received a notice from the county, informing her that:

KEITH W. KINDT'S Medical Assistance benefits will stop on April 1, 1992 because: [His] personal or real property is more than the medical assistance limits.

The front of the notice urged Kindt to seek advice if she did not understand its contents. The back of the notice, which she did not examine, listed an appeals period of 30 days, or 90 days with good cause.

Although Kindt consulted her attorney regarding this letter, she made no formal attempt to appeal the county's action until May 1993. On July 6, 1993, an appeals referee heard the matter and advised Kindt to reapply for MA because this would partially preserve Keith Kindt's rights on the merits if the Commissioner of Human Services ruled the appeal of the 1992 decision untimely. Following this advice, Kindt reapplied for benefits, which the county denied pending the outcome of the original appeal. The Commissioner treated Kindt's action as an appeal from both the 1992 termination of

benefits and the denial of Kindt's second application.

In January 1994, the Commissioner adopted the referee's proposed order and affirmed the county's actions, holding Kindt's appeal of the original benefit termination letter untimely and determining Keith Kindt ineligible for MA under the 1993 application because his trust constituted an available asset. Pursuant to Minn.Stat. § 256.045, subd. 7, Kindt sought judicial review. The district court affirmed the Commissioner's decision.

## ISSUES

I. Did the October 1992 benefit termination letter conform to the notice requirements of the Due Process Clause, thus binding Kindt's interests and obliging her to bring a timely appeal?

II. Is a trust established pursuant to a judicially-approved settlement agreement an available asset for purposes of determining Medicaid eligibility when the beneficiary's heirs are entitled to the remainder and the trustee enjoys the discretion to distribute the trust's corpus in the absence of medical assistance benefits?

## ANALYSIS

In reviewing MA eligibility determinations, we examine de novo the agency's decision for constitutional violations and other errors of law. *In re Leona Carlisle Trust Created Under the Trust Agreement Dated Feb. 9, 1985,* 498 N.W.2d 260, 263 (Minn.App. 1993) (reviewing de novo legal questions surrounding an individual's MA eligibility); *In re Welfare of Sayles,* 407 N.W.2d 414, 416–18 (Minn.App.1987) (reviewing an agency's MA eligibility decision for constitutional violations and other errors of law), *aff'd,* 427 N.W.2d 653 (Minn.1988). This case requires us to decide (1) whether the original benefit termination letter violated the notice requirements of the Due Process Clause, and (2) whether Keith Kindt's trust is an available asset under 42 U.S.C. § 1396a(k) (1988).

## I.

Kindt argues the October notice was ineffective to start the running of the statutory appeals period because it failed to inform her of the interest involved or the basis for the termination of benefits. *See Schulte v. Transportation Unlimited, Inc.,* 354 N.W.2d 830, 832, 835 (Minn.1984) (remanding for de novo consideration of the claimant's reemployment insurance eligibility, despite his untimely appeal, because the agency violated the Due Process Clause by not informing him of the consequences of a proposed adverse action); *Anderson v. Moberg Rodlund Sheet Metal Co.,* 316 N.W.2d 286, 288 (Minn.1982) ("[T]he requirements of a fair hearing include notice of the claims of the opposing party * * * ." (quoting *Federal Trade Comm'n v. National Lead Co.,* 352 U.S. 419, 427, 77 S.Ct. 502, 508, 1 L.Ed.2d 438 (1957))). Taken out of context, an *October 1992* notice that MA benefits "will stop on *April 1, 1992* " might appear to be an unclear statement of the interest involved. However, Keith Kindt's benefits *had already been suspended* on April 1 and would resume only upon a favorable resolution of questions surrounding his eligibility. Prior to October 1992, Kindt understood this matter was not yet closed and had inquired into its status in May 1992. The October 1992 notice stated the exact consequence of the county's final eligibility determination: Keith Kindt would receive no benefits for an open-ended period beginning April 1, 1992. This case manifests none of the evils discussed in *Schulte:* the county disclosed the magnitude of the proposed benefit reduction (total) and informed Kindt of the full range of negative consequences of its decision (no further benefits from the date of initial suspension). *See Schulte,* 354 N.W.2d at 835 (treating an agency's failure to inform a person of the amount of proposed reductions or the full range of negative consequences as insufficient notice and, thus, a violation of the Due Process Clause). Indeed, had the county not specified the April 1 benefit termination date, it could have been accused of failing to notify Kindt of the *full extent* of negative consequences resulting from its action.

The October 1992 notice also cited "your personal or real property is more than the

medical assistance limits" as the reason for the termination of benefits. Under the facts and circumstances of this case, we conclude that this constitutes sufficient notice of the basis for the county's action. As Kindt testified, Keith Kindt had *no* assets other than the trust and his clothes. Moreover, by May 1992 at the latest, Kindt knew the eligibility investigation would remain open until the Attorney General's Office had resolved the issues surrounding Keith Kindt's settlement trust. Viewed against this background, the October notice was sufficient to inform Kindt of the county's determination that Keith Kindt's trust rendered him ineligible for further MA benefits. Because Kindt's attorneys had previously structured the trust and its funding specifically to avoid federal attribution rules, they knew exactly how to respond to the county's assertions regarding the existence of available assets. *Cf. Anderson,* 316 N.W.2d at 288–89 (finding a violation of the appellant's constitutional and rule-based rights to a fair hearing because he never received *any* notice of the grounds relied on by the opposing party and, thus, lacked a meaningful opportunity to prepare his case).

Kindt received information sufficient to put her on notice of the consequences of, and reasons for, the county's action. The October 1992 termination letter effectively bound her interests and required her to bring an appeal. As a result of her failure to act within the statutory appeals period, Kindt's challenge of the original benefit discontinuation is untimely.[1]

## II.

■ Congress enacted the Medicaid program in 1965 as a cooperative federal-state effort to provide health care to needy individuals. *Miller v. Ibarra,* 746 F.Supp. 19, 23 (D.Colo.1990) (quoting *Department of Health v. Secretary of Health & Human Servs.,* 823 F.2d 323, 325 (9th Cir.1987)); *Williams v. Kansas Dep't of Social & Rehabilitation Servs.,* 258 Kan. 161, 899 P.2d 452, 455 (1995)

(quoting *Himes v. Shalala,* 999 F.2d 684, 686 (2nd Cir.1993)). State participation is not mandatory, but states taking part in the program must promulgate rules consistent with federal law. *Miller,* 746 F.Supp. at 23 (quoting *Department of Health,* 823 F.2d at 325); *see also Trust Co. of Okla. v. State ex rel. Dep't of Human Servs.,* 825 P.2d 1295, 1302 (Okla.1991) (stating that federal law governs the availability of resources for purposes of Medicaid eligibility), *cert. denied,* 506 U.S. 906, 113 S.Ct. 300, 121 L.Ed.2d 224 (1992). A state's failure to comply with federal requirements may result in the loss of federal funding for its MA program. *In re Estate of Turner,* 391 N.W.2d 767, 769 (Minn. 1986).

■ Eligibility for Medicaid depends on the assets "available" to the applicant. 42 U.S.C. § 1396a(a)(17) (Supp. V 1993). Prior to 1986, many individuals made assets "unavailable" by placing them in irrevocable Medicaid qualifying trusts (MQTs), thus rendering the individuals eligible for Medicaid, while simultaneously preserving the assets for their heirs. H.R.Rep. No. 265, 99th Cong., 1st Sess., pt.1, at 71 (1985). Disturbed by this practice, Congress stated (1) Medicaid is a program designed to provide basic medical care *for those lacking the resources to care for themselves,* and (2) techniques that potentially enrich heirs at the expense of poor people are unacceptable. *Id.* at 71–72. To remedy the situation, Congress proposed a bill to treat as available assets all self-settled trusts, under which the settlor could receive benefits at the trustee's discretion. *Id.* at 72. The amount deemed available to such people is

the *maximum amount* that a trustee *could,* in the *full exercise of discretion* for the distribution of the *maximum amount* to the grantor, distribute to that grantor, whether from income or from principal. Whether the trust was established for the

---

1. The Commissioner treated Kindt's action as an appeal from the 1992 termination of benefits *and* the 1993 denial of her renewed application. The timeliness issue pertains to the former, but not the latter. It controls only the extent of retroac-

tive benefits Keith Kindt would receive if successful on the merits and does *not* preclude us from reaching the merits on his subsequent application.

purpose of enabling the grantor \* \* \* to qualify for Medicaid is irrelevant.

*Id.* (emphasis added).

The result of this congressional effort went into effect in 1986 and provides:

(1) In the case of a medicaid qualifying trust \* \* \* the amounts from the trust deemed available to a grantor \* \* \* is the maximum amount \* \* \* that may be permitted under the terms of the trust to be distributed to the grantor, assuming the full exercise of discretion \* \* \* for the distribution of the maximum amount to the grantor. For purposes of the previous sentence, the term "grantor" means the individual referred to in paragraph (2).

(2) For purposes of this subsection, a "medicaid qualifying trust" is a trust, or similar legal device, established (other than by will) by an individual (or an individual's spouse) under which the individual may be the beneficiary of all or part of the payments from the trust and the distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion \* \* \*.

(3) This subsection shall apply without regard to—

(A) whether or not the medicaid qualifying trust is irrevocable or is established for purposes other than to enable a grantor to qualify for medical assistance under this subchapter; or

(B) whether or not the discretion described in paragraph (2) is actually exercised.

(4) The State may waive the application of this subsection \* \* \* where the State determines that such application would work an undue hardship.

42 U.S.C. § 1396a(k).

Congress repealed this provision in 1993 and, in conjunction with modifications to sections regarding the transfer of assets to third parties, recodified an amended version at 42 U.S.C. § 1396p(d) (Supp. V 1993).[2] Omnibus Budget Reconciliation Act of 1993, Pub.L. No. 103–66, § 13611, 107 Stat. 312, 622–27. While the amended version does not apply to trusts created on or before August 10, 1993, some of the new provisions are not substantive amendments but simply codify judicial interpretations of existing law. *See id.* § 13611(e)(2)(C) (providing the effective date); *Williams,* 899 P.2d at 460–61 (holding the "new" definition of self-settled trusts was implied in the old law and, thus, is not a substantive amendment).

Kindt argues the agency erred in interpreting 42 U.S.C. § 1396a(k) and in concluding (1) Keith Kindt is the beneficiary of a self-settled trust, and (2) the trustee enjoys the discretion to make distributions in excess of the MA eligibility ceiling.[3]

### A. *Self-Settled Trusts*

In applying 42 U.S.C. § 1396a(k) to determine whether a trust is self-settled, most courts employ a broad, functional definition designed to prevent the use of formalistic devices to shelter assets, at Medicaid expense, for the potential benefits of heirs. *See Romo v. Kirschner,* 181 Ariz. 239, 889 P.2d 32, 34–36 (Ct.App.1995) (holding the beneficiary's entitlement to compensation as the result of an accident made the settlement trust self-settled); *Thomas v. Arkansas*

---

**2.** This new provision differs from the old law in several ways. First, it *specifies* an individual is deemed to have created a trust if that person, the person's spouse, or any other person (including a court) having the authority to act for the individual created the trust using resources to which the individual was entitled. 42 U.S.C. § 1396p(d)(2), (e)(1) (Supp. V 1993). Second, to the extent the trustee can distribute funds to the beneficiary *under any circumstances,* that amount is deemed available to the beneficiary. *Id.* § 1396p(d)(3)(B)(i). Third, amounts which the trustee could not distribute to the beneficiary under any circumstances are deemed to be assets transferred by the beneficiary to a third party

and availability is governed by the rules on transferred assets. *Id.* § 1396p(d)(3)(B)(ii). Fourth, these rules of imputation *specifically* do not apply to the situation in which the beneficiary is *disabled and under 65,* and the trust's remainder is payable to the state up to the amount of MA benefits received by the individual. *Id.* § 1396p(d)(4)(A). And fifth, states are now *required* to promulgate standards for granting hardship waivers consistent with federal guidelines. *Id.* § 1396p(d)(5).

**3.** To qualify for MA, an individual cannot have more than $3,000 in available assets. Minn.Stat. § 256B.056, subd. 3 (1994).

*Dep't of Human Servs.*, 319 Ark. 782, 894 S.W.2d 584, 588–89 (1995) (declaring a settlement trust self-settled because the defendant-grantor merely acted on the plaintiff's behalf)[4]; *Forsyth v. Rowe*, 226 Conn. 818, 629 A.2d 379, 382–86 (1993) (holding a trust is established by the person whose cause of action funds it); *Barham v. Rubin*, 72 Haw. 308, 816 P.2d 965, 965–67 (1991) (rejecting the position that a court, and not the beneficiary, created a settlement trust because such a holding would frustrate Congress's intent to prevent the sheltering of assets through technical gimmicks); *Williams*, 899 P.2d at 456–59 (holding a trust is established by the person whose cause of action funds it); *Ronney v. Department of Social Servs.*, 210 Mich.App. 312, 532 N.W.2d 910, 913–14 (1995) (concluding a trust is settled not by the person who formally executes the trust agreement, but by the person whose interests fund it); *Striegel* v. *South Dakota Dep't of Social Servs.*, 515 N.W.2d 245, 246–48 (S.D.1994) (stating a trust is created by a beneficiary if it is established by a person acting on the beneficiary's behalf with funds to which the beneficiary has some entitlement and holding this is a reasonable interpretation of federal law).

▌ Contrary to the weight of authority, Kindt argues this trust cannot be an MQT because the South Dakota court acted as grantor, using funds supplied by the defendants. However, the three cases cited by Kindt turn on exceptional circumstances, persuading most courts not to adopt their outcome as the general rule. First, *Miller* involved the judicial creation of irrevocable trusts that *preserved the remainders for the state. See Miller*, 746 F.Supp. at 33–34 (holding that Congress did not intend to discourage this type of transaction and relying, in part, on the trusts' remainder provisions); *see also Forsyth*, 629 A.2d at 382, 384–85 n. 12 (rejecting a narrow definition of self-settled trusts and treating *Miller* as resting on the trusts' remainder provisions); *Barham*, 816 P.2d at 966–67 (same); *Williams*, 899 P.2d at 456–59 (same); *Striegel*, 515 N.W.2d at 246–48 (same). Second, *Trust Co.* result-

ed from what appears to have been a casual statement regarding a collateral issue. *See Trust Co.*, 825 P.2d at 1302 n. 31 (declaring without discussion, in one of 46 footnotes, that a trust was not an MQT because the defendant, and not the plaintiff-beneficiary, created it pursuant to a settlement agreement); *see also Williams*, 899 P.2d at 458–59 (rejecting *Trust Co.* on this point because of its cursory treatment of the issue); *cf. Romo*, 889 P.2d at 35 (rejecting *Trust Co.* as unpersuasive and contrary to congressional intent). And third, in *Kegel v. State*, the agency failed to establish that the trust was funded with money intended to compensate the beneficiary and not his parents. *See Kegel v. State*, 113 N.M. 646, 830 P.2d 563, 564, 567–68 (Ct.App.1992) (holding that a trust, formally created by a beneficiary's conservator, was not an MQT because the settlement checks funding the trust were made out to the conservator *and* the beneficiary's parents (who were also plaintiffs) in their individual capacities); *see also Forsyth*, 629 A.2d at 384 n. 12 (interpreting *Kegel* not to require a narrow definition of self-settled trusts, but proof that an allegedly self-settled trust was created with funds intended to compensate the beneficiary and not others); *Williams*, 899 P.2d at 458 (same). Because this case presents no extraordinary circumstances, we follow the majority rule and hold that, because Keith Kindt's trust was funded pursuant to a plan devised by *his* guardian for *his* benefit, using funds released for the purpose of settling *his* claim, and was written in a manner that potentially shelters assets for the ultimate benefit of *his* children, Keith Kindt is the grantor of the trust for purposes of determining MA eligibility.

In addition to the arguments raised in the cases she cites, Kindt offers several unsupported justifications for her interpretation of 42 U.S.C. § 1396a(k). First, she argues the 1986 MQT law cannot provide a broad definition of self-settled trusts because it describes them as trusts created by an *individual beneficiary* or *that person's spouse*; only the 1993 law (applying to trusts created after August 10, 1993) *specifically* provides a

---

4. Interpreting a state law designed to bring Arkansas into compliance with federal require-

ments. *See* Ark. Acts 1993 No. 1228, § 5 (setting forth the purpose of the state law).

broad, functional definition. However, the appellate courts of seven states have concluded the 1986 law's purpose *implies* a broad definition of self-settled trusts. *See Romo,* 889 P.2d at 34–36 (rejecting a narrow definition of self-settled trusts in order to give effect to congressional intent); *Thomas,* 894 S.W.2d at 588–89 (same); *Forsyth,* 629 A.2d at 382–86 (same); *Barham,* 816 P.2d at 966–67 (same); *Williams,* 899 P.2d at 456–59 (same); *Ronney,* 532 N.W.2d at 913–14 (same); *Striegel,* 515 N.W.2d at 246–48 (same). While Congress may have chosen to make express in 1993 that which it implied in 1986, this is not a substantive "amendment" subject to the new law's effective date. *Williams,* 899 P.2d at 460–61.

Second, Kindt argues Congress intended section 1396a(k) to prevent only the *truly wealthy* from sheltering assets for the potential benefit of heirs. However, while Congress felt particular animosity towards prosperous individuals who engaged in this practice, it enacted the 1986 law to prevent *anyone,* regardless of affluence, from gaining MA eligibility by placing assets into a trust that might eventually fall to the settlor's heirs. *Ronney,* 532 N.W.2d at 914; *Striegel,* 515 N.W.2d at 248.

■■■■ Finally, Kindt draws our attention to a June 1994 trust amendment, which substituted Minnesota as the remainderman of Keith Kindt's trust. In addressing this matter, we are mindful of our limited scope of review. When a district court had reviewed an agency decision in an appellate capacity, we independently evaluate the administrative decision in light of the *agency's* record. *Dullard v. Minnesota Dep't of Human Servs.,* 529 N.W.2d 438, 442 (Minn.App.1995). Pursuant to Minn.Stat. § 256.045, subds. 7, 8 (1994), district courts engage in appellate review of MA eligibility decisions and may not receive new or additional evidence unless necessary to a more equitable disposition of the appeal. Thus, a district court has the discretion to expand the record only for the

purpose of discovering whether the agency properly resolved the matter based on facts *in existence at the time of its decision. See Herman v. Ramsey County Community Human Servs. Dep't,* 373 N.W.2d 345, 348–49 (Minn.App.1985) (holding the district court did not abuse its discretion by refusing to hear new evidence regarding events occurring well after the appellant's application for MA because such information had no bearing on the propriety of the agency's decision).

■■■ Pipestone County discontinued Keith Kindt's MA benefits in 1992. In 1993, Kindt appealed the county's decision. In January 1994, the Commissioner affirmed the county and, in February, Kindt sought judicial review. Only in May 1994 did Kindt petition the South Dakota court for amendment of the trust, which that court granted in June 1994. Kindt neither filed a new application for MA nor requested the agency to reassess Keith Kindt's eligibility in light of the amendment. Instead, she brought the amendment to the district court's attention during the pendency of her appeal. The district court should not have considered this evidence because this occurrence bears no relevance to the propriety of the agency's decision, which must be evaluated in light of the record before the administrative tribunal. *Id.* Therefore, while we question the district court's conclusion that the 1986 law contains no implied exception for trusts that preserve remainders for the state's benefit,[5] Kindt's failure to raise this issue before the agency precludes us from considering the amendment's effect. *See Dullard,* 529 N.W.2d at 442 (stating that, when the district court sits in an appellate capacity, the court of appeals reviews the *agency's* record); *Herman,* 373 N.W.2d at 348–49 (holding that evidence regarding post-agency-hearing occurrences has no bearing on the propriety of the agency's decision); *cf. Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (declining to address an issue raised for the first time on appeal).

Because Kindt has not convinced us of the inapplicability of the general rule to this case,

---

5. See Miller, 746 F.Supp. at 33–34 (determining a judicially-created trust that left the remainder to the state was not an MQT because it did not violate the purposes underlying 42 U.S.C. § 1396a(k)); *see also Forsyth,* 629 A.2d at 384–85 n. 12 (distinguishing, but not rejecting, *Miller*

because, in *Miller,* the judicially-created trust's remainder *went to the state* and not to the beneficiary's heirs); *Barham,* 816 P.2d at 967 (same); *Williams,* 899 P.2d at 459 (same); *Striegel,* 515 N.W.2d at 248 (same).

we hold that, for purposes of 42 U.S.C. § 1396a(k), Keith Kindt's trust is self-settled and, thus, an MQT.

### B. Trustee's Discretion

Even if a trust is an MQT, the corpus is not necessarily deemed available to the beneficiary. Rather, the law treats the beneficiary as having access to

> The *maximum amount* * * * that *may* be permitted under the terms of the trust * * * assuming the *full exercise* of discretion by the trustee * * * for the distribution of the *maximum amount* to the grantor.

42 U.S.C. § 1396a(k)(1) (emphasis added). This rule applies regardless of the grantor's intent to render him- or herself eligible for Medicaid. H.R.Rep. No. 265, at 72.

▮▮▮ Kindt argues that, even if the trust is an MQT, its terms prohibit the distribution of any amount that would render Keith Kindt ineligible for public assistance. However, whether we measure the trustee's discretion at its broadest point or declare the MQT's welfare-generating limitations on discretion void as against public policy, the result is the same. The trustee of Keith Kindt's trust enjoys the discretion to distribute large amounts of the corpus. *See Miller*, 746 F.Supp. at 21, 34 (declaring trust assets unavailable because the trustee lacked discretion, under *all* circumstances, to distribute *more* than a specific dollar amount); *Williams*, 899 P.2d at 460 (concluding trust funds were available because the trustee would have discretion to distribute them in the absence of MA); *see also Thomas*, 894 S.W.2d at 587–88 (treating an MQT's welfare-generating restrictions on trustee discretion as a violation of public policy); *Forsyth*, 629 A.2d at 386 (suggesting such limitations might not be valid). Unlike the trustee in *Miller*, the trustee of Keith Kindt's trust is not limited to a specific dollar amount under all circumstances. Rather, like the trustee in *Williams*, the trustee may distribute any part of the trust's corpus in the absence of MA.

### C. State Law

▮▮▮ Kindt implausibly argues that, even if Keith Kindt is not entitled to MA under federal law, he is eligible under a Minnesota judicial decision that decided the availability of certain trust assets in the absence of controlling federal or state laws or regulations. *See In re Leona Carlisle Trust*, 498 N.W.2d at 262–66 (deciding only that a *non-self-settled* discretionary trust is not an available asset for MA eligibility purposes). However, state MA provisions must comply with federal law. *Miller*, 746 F.Supp. at 23 (quoting *Department of Health*, 823 F.2d at 325); *Forsyth*, 629 A.2d at 383; *Trust Co.*, 825 P.2d at 1302. At a minimum, failure to adhere to federal requirements may render a state ineligible for federal funding of its MA program. *Turner*, 391 N.W.2d at 769. Under these circumstances, we cannot agree that a judicial decision, rendered in the absence of state and federal laws and regulations, should be used to bring Minnesota's MA eligibility rules into direct conflict with a controlling federal statute. *See* 42 U.S.C. § 1396a(k) (treating the majority of MQTs as available assets); Minn. R. 9505.0060, subp. 3.B (1993) (reproducing the substance of 42 U.S.C. § 1396a(k)). Kindt's reliance on non-controlling case law to frustrate the requirements of federal law and state regulations is misplaced.

### DECISION

The October 1992 benefit termination letter complied with the notice requirements of the Due Process Clause and, thus, bound Kindt's interests and obliged her to file a timely appeal. Because Keith Kindt's trust was funded pursuant to a plan devised by *his* guardian for *his* benefit, using assets released for the purpose of settling *his* claim, and was written in a manner that potentially shelters assets for the ultimate benefit of *his* children, it is an MQT. In addition, because the trustee enjoys the discretion, in the absence of MA payments, to distribute the entire corpus for Keith Kindt's benefit, the trust's res is available to him within the meaning of 42 U.S.C. § 1396a(k).

**Affirmed.**