In re the Matter of the Appeal of Edna R. ROSCKES, et al., petitioners, Appellants,

v.

COUNTY OF CARVER, Community Social Services, Respondent,

Commissioner of Minnesota Department of Human Services, Respondent.

No. A09–1821.

Court of Appeals of Minnesota.

June 8, 2010.

Charles W. Hollenhorst, Nicklaus, Braaten & Hollenhorst, P.L.L.C., Chaska, MN, for appellants.

James W. Keeler, Jr., Carver County Attorney, Thomas W. Haines, Assistant County Attorney, Chaska, MN, for respondent County of Carver, Community Social Services.

Lori Swanson, Attorney General, Robin C. Vue–Benson, Assistant Attorney General, Corrie Baer Oberg, Assistant Attorney General, St. Paul, MN, for respondent Commissioner of Minnesota Department of Human Services.

Considered and decided by LARKIN, Presiding Judge; WORKE, Judge; and COLLINS, Judge.

## OPINION

WORKE, Judge.

Appellant-trustee, on his own behalf and on behalf of the decedent's estate, argues that funds in the decedent's trust were not available to her for purposes of determining medical-assistance eligibility, and also seeks to recover fees and other costs from the state under Minn.Stat. § 15.472 (2008).

Respondents argue that the district court did not have subject-matter jurisdiction to consider this appeal because the notice of appeal of the commissioner's decision filed in district court was deficient. Respondents also argue that the trustee lacked standing to bring this appeal on his own behalf. We conclude that the district court had subject-matter jurisdiction, but we reject appellants' arguments and affirm.

## FACTS

In 2002, after the death of her husband, Edna R. Rosckes (decedent) established an irrevocable trust in which she named herself as the primary beneficiary. She funded the trust by transferring to it the titles to her homestead and an adjacent parcel of land that she owned. These properties were eventually sold for approximately $180,000, and the proceeds were placed in an investment account held by the trust. Decedent named her son, Bernard Rosckes (appellant-trustee), as the trustee. The trust provided in pertinent part that:

3.1. During the lifetime of the Settlor, the trustee[ ] shall not pay to the Grantor any net income from the trust estate. The net income, if any, shall be added to the principal assets of this trust. If at any time or from time to time the Trustee[ ] shall find that the income available to Grantor from all sources is not sufficient to reasonably provide for her care, comfort, and support, then and in such event the Trustee shall, in the exercise of their sole and complete discretion, expend all or any part of said balance of said income, but not the principal assets, for and on behalf of the Grantor in order to reasonably provide for such care, comfort and support.

. . . .

3.5. Subject to the rights of the primary beneficiary under Paragraph 3.1, until the trust terminates, the trustee may pay income and principal to the primary beneficiary at such times and in such portions as the trustee deems advisable.

In 2007, decedent entered a nursing home. She applied for medical assistance in January 2008. Respondent Carver County Community Social Services (CCCSS) sent decedent a letter stating that applicants must have $3,000 or less in assets to be eligible for medical assistance, that assets available to decedent in her trust exceeded this amount, and that she had ten days to reduce her assets without making an improper transfer in order to qualify for medical assistance. Decedent construed this letter as a denial of medical assistance and appealed to respondent commissioner of human services. In June 2008, CCCSS sent decedent a formal notice of its denial of medical assistance, and decedent died shortly thereafter. In July, a human-services judge (HSJ) recommended affirming the denial of medical assistance, and the commissioner adopted this recommendation.

Appellant-trustee, on behalf of both himself and decedent's estate (collectively, appellants) appealed the denial of medical assistance to the district court. CCCSS and the commissioner (collectively, respondents) moved to dismiss the appeal for lack of subject-matter jurisdiction and to remove trustee from the appeal for lack of standing. The district court denied the motion to dismiss the appeal, but granted the motion to remove trustee as a party, and affirmed the commissioner's decision. This appeal follows.

## ISSUES

I. Did the district court have subject-matter jurisdiction to consider this appeal?

II. Did the district court err in determining decedent to be ineligible for medical assistance?

## ANALYSIS

### I

■■■ Respondents assert that the district court did not have subject-matter jurisdiction to consider this case. Subject-matter jurisdiction governs a court's authority to consider and decide the issue in controversy. *Robinette v. Price*, 214 Minn. 521, 526, 8 N.W.2d 800, 804 (1943). Subject-matter jurisdiction "cannot be conferred by consent of the parties, it cannot be waived, and it can be raised at any time in the proceeding." *Tischer v. Housing & Redevelopment Auth. of Cambridge*, 693 N.W.2d 426, 430 (Minn.2005) (citing Minn. R. Civ. P. 12.08(c)). Whether subject-matter jurisdiction exists is a question of law, which this court reviews de novo. *Id.* at 428.

■■■ We first note that respondents' arguments do not pertain to subject-matter jurisdiction. The critical question in determining subject-matter jurisdiction is whether the court has the power to decide an issue, not whether the present case was properly brought. *See In re Civil Commitment of Giem*, 742 N.W.2d 422, 430 (Minn.2007) (holding that a party's failure to meet a mandatory deadline, though it required the district court to discharge a petition for civil commitment, did not divest the district court of subject-matter jurisdiction). The power of district courts to review decisions of the commissioner of human services has been established by the legislature. Minn.Stat. § 256.045, subd. 7 (2008). We accordingly conclude that the district court had subject-matter jurisdiction to consider this appeal.

We next address respondents' claim that appellants brought this appeal in violation of Minn.Stat. § 573.01 (2008), which provides that a cause of action survives only to the personal representatives of a deceased party, if at all. No personal representative had yet been named for decedent's estate when this appeal was brought in district court. But the district court was presented with an appeal from an agency determination that occurred during decedent's lifetime, rather than an original cause of action. Section 573.01 therefore does not apply. Respondents also cite *Poupore v. Stone Ordean Wells Co. (In re Poupore's Estate )*, in which the supreme court held that "[a] judgment for or against a party who is dead at the time suit was commenced is void." 132 Minn. 409, 411, 157 N.W. 648, 649 (1916). But again, the district court was faced with an appeal from an agency decision in the present case. In *Poupore*, the party named in the suit died before the action commenced. *Id.* at 410, 157 N.W.2d at 649. *Poupore* is therefore inapposite. Furthermore, in a typical appeal to this court, even if a party dies before a notice of appeal is filed and no personal representative is named, the rules of civil appellate procedure allow an appeal to proceed if filed by the deceased party's attorney of record. *See* Minn. R. Civ.App. P. 143.02. While the rules of civil appellate procedure are not necessarily dispositive, the district court was sitting in an appellate capacity, and we discern no error in its decision to allow this appeal to proceed. *Cf.* Minn. R. Civ. P. 25.01 (addressing death of parties to civil proceedings in district court).

Because we conclude that respondents' arguments fail, we need not consider whether the district court properly substituted a party for decedent under Minn. R. Civ.App. P. 143.02 or whether trustee has standing to bring this appeal on his own behalf. Therefore, we shall proceed to consider appellants' arguments on their merits.

## II

Appellants argue that the county erred in denying medical assistance to decedent based upon the assets in her trust. An agency's medical-assistance eligibility determination is reviewed independently by this court without deference to the district court's decision. *Estate of Atkinson v. Minn. Dep't of Human Servs.*, 564 N.W.2d 209, 213 (Minn.1997). Reversal is appropriate only when the challenging party shows that the agency's decision contains errors of law, is unsupported by substantial evidence, or is arbitrary and capricious. Minn.Stat. § 14.69 (2008); *Fish v. Minn. Dept. of Human Servs.*, 748 N.W.2d 360, 363 (Minn.App.2008). The construction of ambiguous language in a trust is an issue of law subject to de novo review. *In re Estate & Trust of Anderson*, 654 N.W.2d 682, 687 (Minn.App. 2002). The issue of whether resources in a trust are available for the purposes of medical-assistance eligibility is also a question of law. *In re Carlisle Trust*, 498 N.W.2d 260, 263 (Minn.App.1993). The challenging party has the burden to establish whether a trust is an available asset. *Id.*

Minnesota's medical-assistance program was "intended to comply with and give effect to" the federal Medicaid statute. Minn.Stat. § 256B.22 (2008); *see also Carlisle*, 498 N.W.2d at 263 n. 1 (noting that "Medicaid" is referred to in Minnesota as "medical assistance"). Medical assistance, in turn, was intended to ensure medical care for persons who lacked the resources to pay for it, and "to be the payor of last resort." *In re Estate of Barg*, 752 N.W.2d 52, 58 (Minn.2008). Minnesota's medical-assistance program

excludes from eligibility any person who individually owns more than $3,000 in assets, in order to ensure that medical assistance is made available only to those in genuine financial need. Minn.Stat. § 256B.056, subd. 3 (2008); *Carlisle,* 498 N.W.2d at 263. Despite congressional intent to limit Medicaid to the financially needy, many individuals exploited a loophole in the Medicaid statute allowing them to attain Medicaid eligibility while preserving assets for their heirs by transferring their assets to irrevocable Medicaid-qualifying trusts (MQTs). *In re Kindt,* 542 N.W.2d 391, 395 (Minn.App.1996). In effect, this allowed an individual to "have his cake and eat it too." *Cohen v. Comm'r of Div. of Med. Assistance,* 423 Mass. 399, 668 N.E.2d 769, 772 (1996). Congress was disturbed by this practice and attempted to curtail it in a 1986 statute, which was eventually repealed and recodified as amended in section 13611(b) of the Omnibus Budget Reconciliation Act of 1993 (OBRA), codified as 42 U.S.C. § 1396p(d). *Id.* at 395–96, 542 N.W.2d 391. Accordingly, Minnesota's medical-assistance program provides that trusts established after August 10, 1993, are subject to 42 U.S.C. § 1396p(d). Minn.Stat. § 256B.056, subd. 3b(b) (2008).

In the case of an irrevocable trust, when there "are *any* circumstances under which payment from the trust *could* be made to or for the benefit of the individual," those portions of the income from or corpus of that trust are "resources available to the individual" for the purposes of state medical-assistance programs. 42 U.S.C. § 1396p(d)(3)(B)(1) (2006) (emphasis added). Decedent's trust required trustee to pay to decedent (as the grantor) "any net income from the trust estate" that decedent needed for her care, comfort, and support if her own income was insufficient. Decedent's trust also allowed trustee to pay to decedent (as primary beneficiary)

"income and principal ... at such times and in such portions" as he deemed advisable. By these terms, all of the trust's principal and income could have been paid to decedent in some capacity, and were thus available to decedent under 42 U.S.C. § 1396p(d). Accordingly, we discern no error in CCCSS's determination that the assets in decedent's trust rendered her ineligible for medical assistance.

 Appellants argue that decedent's trust was a discretionary trust and therefore, under *Carlisle,* its assets were unavailable in determining decedent's medical-assistance eligibility. A discretionary trust is one that "gives the trustee complete discretion to distribute all, some, or none of the trust income or principal to the beneficiary, as the trustee sees fit." *Carlisle,* 498 N.W.2d at 264. Prior caselaw holds that, unlike support trusts, the assets of certain discretionary trusts are not available for purposes of determining medical-assistance eligibility. *Id.; United States v. O'Shaughnessy,* 517 N.W.2d 574, 578 (Minn.1994). But the current state statute applies 42 U.S.C. § 1396p(d) to trusts created after August 10, 1993, and makes no distinction between discretionary trusts and support trusts. Minn.Stat. § 256B.056, subd. 3b(b). Both *Carlisle* and *O'Shaugnessy* involved trusts created before August 10, 1993, and are therefore inapposite. Appellants also cite to *In re Flygare,* where this court applied *Carlisle* in determining whether a trust that was established after August 10, 1993, was a discretionary trust. 725 N.W.2d 114, 120 (Minn.App.2006), *review denied* (Minn. Feb. 28, 2007). But the trust in *Flygare* was established in a will, *id.* at 117, and section 1396p(d) specifically excludes such trusts from its requirements. 42 U.S.C. § 1396p(d)(2)(A) (2006). Thus, *Flygare* is also inapposite.

Applying earlier versions of the current statutes, this court has previously rejected the argument that a person determined ineligible for medical assistance under federal law because of an MQT could be determined eligible under *Carlisle*. *Kindt*, 542 N.W.2d at 399. We recognized in *Kindt* that *Carlisle* was decided "in the absence of controlling federal or state laws or regulations." *Id.* We concluded that because Minnesota's medical-assistance program is required to comply with federal law, *Carlisle* could not be used to bring medical-assistance eligibility rules in conflict with controlling federal statutes. *Id.* Appellants argue that *Kindt* is factually distinguishable, but the factual differences of this case do not affect the applicability of Minn.Stat. § 256B.056, subd. 3b(b) or 42 U.S.C. § 1396p(d), the controlling federal law in this case. Accordingly, we hold that because decedent's trust assets rendered her ineligible for medical assistance under controlling state and federal statutes, she cannot be eligible for medical assistance under cases like *Carlisle* decided in the absence of these statutes.

■ Finally, we reject appellants' claim for fees and costs under Minn.Stat. § 15.472(a) (2008). First, Minn.Stat. § 15.472(a) allows for the recovery of "fees and other expenses" when "a prevailing party other than the state ... shows that the position of the state was not substantially justified." Because appellants' arguments fail on their merits, the state's position was substantially justified. Second, this court has interpreted "party," as used in section 15.472(a), to exclude individuals, observing that the statute "was targeted specifically towards small businesses." *McMains v. Comm'r of Pub. Safety*, 409 N.W.2d 911, 914 (Minn.App.1987). For both of these reasons, appellants are not entitled to recover fees and costs under section 15.472(a).

## DECISION

The death of decedent before the filing of the notice of appeal to the district court did not deprive the district court of subject-matter jurisdiction to hear this appeal. But under current controlling state and federal law, decedent was properly determined to be ineligible for medical assistance. Appellants are not entitled to recover costs and fees from the state.

**Affirmed.**