[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 7534
Pursuant to General Statutes § 4-183, the plaintiff, Stephanie Vardion, appeals from a decision by the Commissioner, Department of Social Services ("DSS") treating income generated by the corpus of a trust as available income.
The factual background is largely undisputed. On or about March 10, 1995, the plaintiff was admitted to the Mediplex of Wethersfield Convalescent Home where she has remained. On July 10, 1995, the plaintiff applied for Title XIX medicaid benefits to pay for her nursing home care. In order to process the plaintiff's application for benefits, DSS reviewed the plaintiff's assets and income. Included among those assets was a trust which had been created by the plaintiff on August 14, 1991. The plaintiff had transferred certain assets including her home, cash, and stock into a trust known as "The Stella R. Vardion Irrevocable Trust" dated August 14, 1991 ("trust"). On December 19, 1996, DSS granted the plaintiff's application for medicaid benefits effective July 1, 1995 and determined that $490.76 of trust income was "available" to the plaintiff for medicaid purposes each month for the months of January 1997 through June 1997. The plaintiff was required to pay $1,877 each month toward the cost of her care, which is known as "applied income," that is, income applied towards nursing home costs. DSS would then pay the remainder of the nursing home costs. The plaintiff did not contest the availability of the trust income and did not request a hearing.
The plaintiff's eligibility was reviewed on June 1, 1997, to determine if there had been a change in circumstances. It was determined that the plaintiff remained eligible for medicaid benefits, however, the amount of applied income was changed. DSS determined that the amount of trust income available to the plaintiff had decreased from $490.76 to $64.33. When questioned as to the reason for this deduction, the trustee admitted that a portion of the trust principle had been distributed to others. DSS determined that the plaintiff was required to contribute a total of $1,451.89 to the cost of her care each month based on the reduction of Trust income. Of course, the amount DSS paid the nursing home for her care increased to make up the difference. On June 16, 1997, pursuant to General Statutes § 17b-60, the plaintiff requested a fair hearing not only on the change in the applied income, but also to contest the availability of the trust income to the plaintiff. CT Page 7535
A hearing was held on July 15, 1997, before a fair hearing officer. On November 26, 1997, the hearing officer issued a ruling upholding the DSS position deeming the trust income available to the plaintiff based on Department of Income Maintenance Uniform Policy Manual ("UPM") § 4030.80F.
The plaintiff filed a request for reconsideration of the hearing officer's decision which was Wanted on January 2, 1998, given that the wrong UPM section had been cited. (Return of Record ("ROR"), Volume III, Item II, p. 83.) By decision dated March 24, 1998, the hearing officer, Pamela J. Gonzalez, upheld her earlier determination that DSS was correct in deeming the trust income available, citing § UPM 4030.80C and 42 U.S.C. § 1396a
(k), and further held that she did not have jurisdiction over the July 15, 1997 fair hearing on the issue of availability of the trust income because the plaintiff did not request a fair hearing within sixty days of the DSS December 1996 initial eligibility determination. (ROR, Volume III, Item XIII, pp. 111-12.)
It is that March 24, 1998 decision from which the plaintiff has filed this administrative appeal pursuant to General Statutes § 4-183. The issues raised by the plaintiff are: whether the fair hearing officer had jurisdiction over the July 15, 1997 fair hearing to address the availability of trust income to the plaintiff for the months of July 1997 through December 1997; and, whether the trust income is available to the plaintiff pursuant to 42 U.S.C. § 1396a (k).
This court's "review of an administrative appeal is limited. Our Supreme Court has established a firm standard that is appropriately deferential to agency decision making, yet goes beyond a mere judicial `rubber stamping' of any agency's decisions. Connecticut Light Power v. Dept. of Public UtilitiesControl, 219 Conn. 51, 57, 591 A.2d 1231 (1991); Woodbury WaterCo. v. Public Utilities Commission, 174 Conn. 258, 260,386 A.2d 232 (1978). Courts will not substitute their judgment for that of the agency where substantial evidence exists on the record to support the agency's decision, and where the record reflects that the agency followed appropriate procedures. Samperi v. InlandWetlands Agency, 226 Conn. 579, 587, 628 A.2d 1286 (1993);Lieberman v. State Board of Labor Relations, 216 Conn. 253, 262,579 A.2d 505 (1990); Baerst v. State Board of Education,34 Conn. App. 567, 571, 642 A.2d 76, cert denied, 230 Conn. 915,645 A.2d 1018 (1994)." (Internal quotation marks omitted.) Cabasquini v.CT Page 7536Commissioner of Social Services, 38 Conn. App. 522, 525-26, cert denied, 235 Conn. 906 (1995).
This court "must decide, in view of all the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. Ottochian v. Freedom ofInformation Commission, 221 Conn. 393, 397, 604 A.2d 351 (1992). Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . New Haven v. Freedom of Information Commission,205 Conn. 767, 774, 535 A.2d 1297 (1988)." (Emphasis in original; internal quotation marks omitted.) Perkins v. Freedom ofInformation Commission, 228 Conn. 158, 164-65 (1993). "Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not been previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [i]t is for the courts, and not administrative agencies, to expound and apply governing principals of law. . . . (Citations omitted; emphasis in original; internal quotation marks omitted.) Connecticut Light Power Co. v.Texas-Ohio Power, Inc., 243 Conn. 635, 642-43 (1998).
The medicaid program is a "joint federal-state venture providing financial assistance to persons whose income and resources are inadequate to meet the costs of necessary medical care." Burinkas v. Dept. of Social Services, 240 Conn. 141, 148
(1997). In Connecticut, DSS is charged with administering the medicaid program and, in order to do so, has promulgated regulations as part of its uniform policy manual. General Statutes §§ 17b-2 and 17-262. In General Statutes § 17b-264, the legislature recognized the primacy of the applicable federal provisions. "[T]he federal statutes and regulations set a limit upon the authority of the commissioner as well as furnishing a guide to his administration of the program." (Citations omitted.)Clark v. Commissioner, 209 Conn. 390, 397 (1988). CT Page 7537
In the present case, the plaintiff's first argument is that the fair hearing officer had jurisdiction over the July 15, 1997 fair hearing to address the availability of trust income to the plaintiff for the months of July 1997 through December 1997. In her reconsidered decision, the fair hearing officer determined that jurisdiction over the availability of trust income in the applied income calculation was lost because the plaintiff had not requested a hearing regarding the same within sixty days of the granting of the plaintiff's application, which was on December 19, 1996. The plaintiff had requested a fair hearing on DSS's June 1, 1997 decision that reduced the amount of trust income available to the plaintiff each month for the months of July 1997 through December 1997. That request for a fair hearing was timely. DSS contended, however, that in that hearing the plaintiff could not contest the availability of trust income, but only the amount of trust income deemed available to the plaintiff for the months July 1997 through December 1997.
General Statutes § 17b-60 provides in relevant part:
 An aggrieved person authorized by law to request a fair hearing on a decision of the Commissioner of Social Services or the conservator of any such person on his behalf may make application for such hearing in writing over his signature to the commissioner and shall state in such application in simple language the reasons why he claims to be aggrieved. Such application shall be made to the commissioner within sixty days after the rendition of such decision. The commissioner shall thereupon hold a fair hearing within thirty days from receipt thereof. . . .
In her notice of reconsideration, the hearing officer stated:
 It has since been clarified that the appellant did not have the availability of the trust income. As part of the made in December 1996, the income from the trust was deemed and an applied income figure was calculated using the income from the trust.
 UPM Section 1570.05(B)(3)(d) allows a beneficiary to request a hearing on any "action affecting the receipt of benefits, such as computing the amount of benefits". This provision would allow a beneficiary to request a hearing over a claimed error in the calculation of the trust income. It does not allow the reopening of the question of whether the CT Page 7538 income was available in the first place from the trust.
(ROR, Volume III, Item XIII, p 109.)
UPM § 1570.05 provides, in pertinent part, as follows:
B. Right to a Fair Hearing.
 Subject to the conditions described in this chapter, the requester has the right to a Fair Hearing if: . . . 3. the requestor feels that the Department has either failed to take a required action or has taken an erroneous action. Such actions include: . . . . taking any other action affecting the receipt of benefits, such as computing the amount of benefits.
The hearing officer in her decision, cited no authority for her interpretation of the regulation nor of the statute. DSS has not briefed this issue in this administrative appeal.
This court finds that the hearing officer did have jurisdiction to decide the issue of availability of the trust income, as she evidently had concluded in her original decision. The hearing officer did not address the issue of jurisdiction in her original decision, but only addressed jurisdiction based upon the plaintiff's request for reconsideration. Notwithstanding those facts, the matter of jurisdiction can be raised at any time.
This court finds that the hearing officer's June 1, 1997 decision falls within the scope of UPM § 1570.05B (3)(d) since the decision directly impacts the level of medicaid benefits the plaintiff will receive for the months July 1997 through December 1997. The plaintiff complied with General Statutes § 17b-60 in requesting the fair hearing on DSS's June 1, 1997 decision. Accordingly, the fair hearing officer had jurisdiction.
This court holds that the hearing officer's determination that she did not have jurisdiction over the July 15, 1997 fair hearing is contrary to law. However, the hearing officer did address the merits of the plaintiff's arguments. Because the merits of the plaintiff's arguments were addressed by the hearing officer, this court will review those determinations.
The second issue raised by the plaintiff in this administrative appeal is whether the trust income is available to CT Page 7539 the plaintiff pursuant to 42 U.S.C. § 1396a (k) given trust language which forbids the trustee from distributing trust income to the plaintiff while she is confined to a convalescent home and given the fact that the plaintiff is presently confined to a convalescent home.
The plaintiff relies on what is known as an "exculpatory clause" in her trust to argue that the income from the trust should not have been deemed available to her. An exculpatory clause is an attempt to safeguard a grantor's income for his or her heirs when he or she is confined to a nursing home and applying for medicaid yet allow the income to be available if medicaid is not needed. That clause provides: "The Trustee, may,from time to time, provided that the Settlor is not confined to aconvalescent home or other nursing facility, allow the Settlorthe use and enjoyment of any real estate constituting a part ofthe Trust and/or pay to her any or all of the income but not theprincipal of the Trust as the Trustee, in his absolute anduncontrolled discretion, deems advisable for her care andmaintenance." (Emphasis added.) (ROR, Volume I, Exhibit A.2, p. 10.)
42 U.S.C. § 1396a (k) is the relevant federal statute which addresses the availability of funds for a medicaid recipient with regard to a medicaid qualifying trust. Section 1396a (k) provides, in pertinent part, as follows:
 (1) In the case of a medicaid qualifying trust (described in paragraph (2)). the amounts from the trust deemed available to a grantor, for purposes of subsection (a) (17) of this section, is the maximum amount of payments that may be permitted under the terms of the trust to be distributed to the grantor, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the grantor. For purposes of the previous sentence, the term "grantor" means the individual referred to in paragraph (2).
 (2) For purposes of this subsection, a "medicaid qualifying trust" is a trust, or similar device, established (other than by will) by an individual (or an individual's spouse) under which the individual may be the beneficiary of all or part of the payments from the trust and the distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion with respect to the CT Page 7540 distribution to the individual.
(3) This subsection shall apply without regard to —
 (A) whether or not the medicaid qualifying trust is irrevocable or is established for purposes other than to enable a grantor to qualify for medical assistance under this subchapter; or
 (B) whether or not the discretion described in paragraph (2) is actually exercised . . .
Here, the plaintiff argues that since the plaintiff is confined to a convalescent home and given the language of the trust which prohibits the trustee from paying trust income to the plaintiff while the plaintiff is confined to a convalescent home, the trustee is expressly forbidden under the terms of the trust from making any distribution of trust income to the plaintiff. Since the trustee is unable to pay any trust income to the plaintiff in the trustee's discretion under the terms of the trust, the plaintiff argues that the trust income is not available to the plaintiff under 42 U.S.C. § 1396a (k). (Plaintiff's Brief, pp. 13-14.) The plaintiff argues that this case is "very similar" to the Superior Court decision in Ahem v.Thomas, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 556531 (October 9, 1997, DiPentima, J.), which recently was affirmed by the Supreme Court. See Ahern v.Thomas, 248 Conn. 708 (1999). Ahern v. Thomas involved a situation where DSS concluded that the principal of a trust was an asset available to the grantor. There, the plaintiff at an advanced age, established an irrevocable trust four years prior to her application for Medicaid benefits. She paid for her long term care during that period of time. The trust had no provision allowing the trustee to pay to the plaintiff any portion of the trust corpus during the plaintiff's lifetime. The court,DiPentima, J., found that the trust principal was not an asset to the plaintiff. Ahem v. Thomas, supra, Superior Court, Docket No. 556531. Clearly, the present case is distinguishable.
Prior to the enactment of § 1396a (k), individuals "anticipating the need for expensive long-term medical care could impoverish themselves and qualify for medicaid assistance [by transferring assets to an irrevocable trust] while preserving their resources for their heirs." Forsyth v. Rowe, 226 Conn. 818,829 (1993). Prior to 1986, assets or income held in discretionary CT Page 7541 supplemental support irrevocable trusts were considered available to the trusts' beneficiaries only to the extent that such assets and income were actually distributed. Id. However, "Congress closed this loophole by deeming available to the beneficiary the maximum amount that could, at the trustee's discretion, be distributed to the beneficiary from such a trust regardless of whether or not the funds were distributed. 42 U.S.C. § 1396a (k); H.R. No. 99-265, 99th Cong., 1st Sess. 71-72 (1985)." Id. InForsyth v. Rowe, the Connecticut Supreme Court concluded:
 Our conclusion reflects the legislative concern that the medicaid program not be used as an estate planning tool. The medicaid program would be a fiscal risk if individuals were permitted to preserve assets for their heirs while receiving medicaid benefits from the state. Congress enacted the medicaid qualifying trust provision as an addition to the "provisions designed to assure that individuals receiving nursing home and other longterm care services under Medicaid are in fact poor and have not transferred assets that should be used to purchase the needed services before Medicaid benefits are made available. H.R. No. 99-265 99th" Cong., 1st Sess. 71 (1985).
 Forsyth v. Rowe, supra, 226 Conn. 828-29.
Other jurisdictions have reviewed § 1396a (k) medicaid qualifying trusts with exculpatory clauses. In Cohen v. Com'r ofDiv. Of Med. Asst., 668 N.E.2d 769 (Mass. 1996), cert. denied,117 S.Ct. 687, 136 L.Ed.2d 611 (1996), the Supreme Judicial Court of Massachusetts reviewed four cases in which trust instruments attempted to deny the trustee any discretion to make sums available to the grantor if such availability would render the grantor ineligible for public assistance. The trusts all sought to limit the trustees' discretion only insofar as the exercise of that discretion might make the grantor ineligible for public assistance. Id., 774. The Cohen court rejected the argument "that a trust, which denied a trustee any discretion to pay out principal or income while a beneficiary is institutionalized, would have the effect of making the principal or income unavailable during any budgetary period in which the beneficiary is institutionalized." Id., 777. The court concluded: "Thus, if there is a peppercorn of discretion, then whatever is the most the beneficiary might under any state of affairs receive in the full exercise of that discretion is the amount that is CT Page 7542 counted as available for Medicaid eligibility." Id. Courts in other jurisdictions which have addressed the issue have reached similar conclusions. See Matter of Kindt, 542 N.W.2d 391
(Minn.Ct.App. 1996); Williams v. Kansas Dep't. of Social Rehabilitation Servs. 258 Kan. 161, 171-173, 899 P.2d 452 (1995);Hatcher v. Dept. of Health Rehabilitative Servs.,545 So.2d 400, 402 (Fla.Dist.Ct.App. 1989); Ronney v. Dept. of SocialServs., 210 Mich. App. 312, 532 N.W.2d 910 (1995).
Here, the plaintiff argues that the hearing officer's ruling that the trust income is available to the plaintiff because "the available amount is the greatest amount that the trustee in any set of circumstances might have discretion to pay out to the beneficiary" contradicts the plain language of 42 U.S.C. § 1396a
(k). (Plaintiff's Brief, p. 15). The plaintiff argues that § 1396a (k) makes available the "maximum amount of payments that may be permitted under the terms of the trust, not the greatest amount that the trustee in any set of circumstances might have discretion to pay out to the beneficiary." (Emphasis in original; internal quotation marks omitted.) (Plaintiff's Brief, p 15.) This argument was presented to and rejected by the court in Cohenv. Com'r of Div. Of Med. Asst., supra, 668 N.E.2d 716. There, the court found the plaintiff's argument unpersuasive, stating:
 It is the text of the statute itself that leads to the conclusion that the grantors in all of these cases cannot render themselves eligible for Medicaid assistance by these devices. The clause "under the terms of the trust," on which plaintiffs place such heavy emphasis, nestles between the phrase "the maximum amount of payments that may be permitted" and "to be distributed to the grantor, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the grantor." The clause is most naturally read to measure the maximum amount (principal or income) to be deemed available to the grantor, asking what is the greatest amount the trustees in any circumstances have discretion to disburse. The plaintiffs read the clause as not only measuring the maximum amount available to grantors but also as carrying forward to the determination of availability the circumstances in which that amount might be paid. But the clause does not say this, and making it say this is a less natural reading than the alternative. Once we have identified the maximum amount trustees in any circumstances have discretion to pay, we then proceed to ask whether that amount is so large as to render CT Page 7543 the grantor ineligible.
Id., 776.
Additionally, the plaintiff argues that when 42 U.S.C. § 1396a
(k) is contrasted with the current Medicaid trust statute,42 U.S.C. § 1396p (d)(C), there is further support for the plaintiff's argument. In 1993, 42 U.S.C. § 1396a (k) was repealed. See Pub.L. 103-66, Title XIII § 13611(d)(1)(c), August 10, 1993,107 Stat. 627. 42 U.S.C. § 1396p (d)(C) applies to trusts created on or after August 10, 1993, not to the plaintiff's trust in the present case. As pointed out by the plaintiff, clearly the reach of § 1396p (d)(C) is broader than that of § 1396a (k). (Plaintiff's Brief, p. 14.)
Section 1396p (d)(2)(C) (iii) provides that trust funds are available for determining a recipients level of medicaid benefits "without regard to . . . any restrictions on when or whether distributions may be made from the trust. . . ." Section 1396p (d)(3)(B)(i) "if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual, the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual, and payments from that portion of the corpus or income. . . ." The plaintiff argues that in order for § 1396p (d)(C) to have any meaning, § 1396a (k) must be interpreted to honor trust clauses which place restrictions on when and whether trust funds may be distributed from a trust." (Plaintiff's Brief, p. 15). Such is not the case. See Cohen v. Com'r of Div. of Med. Asst., supra, 668 N.E.2d 775; Matter of Kindt, supra, 542 N.W.2d 396.
In her reply brief, the plaintiff attempts to distinguish Inthe Matter of Kindt, Willams, and Cohen, by arguing that "all involved trusts seeking to limit a trustee's discretion just insofar as the exercise of that discretion would make the grantor ineligible for public assistance."[1] (Plaintiff's Reply Brief, pp. 3-4). While it is true that the cause at issue here does not specifically forbid distribution to the grantor while she is receiving public assistance, the clause at issue is the functional equivalent of the same. If distributions cannot be made to the plaintiff only if she is confined to a nursing home or other nursing facility, and the plaintiff has applied for public assistance since she is confined to a nursing home and other facility and is unable to pay the costs, the effect of that CT Page 7544 clause is to make the plaintiff ineligible for public assistance. The desired effect is to make the plaintiff eligible for public assistance while the trust funds remain undisturbed while the plaintiff is confined to a nursing home or other nursing facility.
Based on the foregoing then, this court will find that to allow the plaintiff's arguments concerning her trust, and the income therefrom, would frustrate the very purpose of 42 U.S.C. § 1396a
(k). This court will find that the DSS determination that the income generated by the corpus of the trust is available to the plaintiff for medicaid eligibility purposes was correct.
The plaintiff's administrative appeal from that decision is dismissed.
Michael Hartmere, Judge