**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000466
31-AUG-2022
09:09 AM
Dkt. 84 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

IN THE MATTER OF FLORENCE FUJIMORI,
Appellant-Applicant/Appellant, v.
DEPARTMENT OF HUMAN SERVICES, STATE OF HAWAI'I;
PANKAJ BHANOT, DIRECTOR; LANE T. ISHIDA, HEARING OFFICER,
Appellees-Appellees.
(CIVIL NO. 16-1-1703)

AND

IN THE MATTER OF EDWARD FUJIMORI,
Appellant-Applicant/Appellant, v.
DEPARTMENT OF HUMAN SERVICES, STATE OF HAWAI'I;
PANKAJ BHANOT, DIRECTOR; LANE T. ISHIDA, HEARING OFFICER,
Appellees-Appellees.
(CIVIL NO. 16-1-1914)


NO. CAAP-17-0000466


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT


AUGUST 31, 2022


HIRAOKA, PRESIDING JUDGE, NAKASONE AND MCCULLEN, JJ.

OPINION OF THE COURT BY MCCULLEN, J.

Appellants-Applicants/Appellants Edward Fujimori (**Edward**) and Florence Fujimori (**Florence**) (collectively, **Fujimoris**) appeal from the Circuit Court of the First Circuit's[1] April 26, 2017 order and May 11, 2017 judgment affirming Appellees/Appellees Department of Human Services' (**DHS**) administrative decisions denying Edward's and Florence's applications for Medicaid assistance to pay for their long-term care. In challenging the circuit court's order and judgment, Edward and Florence request that we vacate and remand with instructions to "issue all benefits . . . determined to be due and owing since the time of their original applications." We affirm the circuit court's order and judgment.

## BACKGROUND

### A. Relevant Medicaid History

"The purpose of [M]edicaid is to provide assistance to those whose income and resources are inadequate to meet the costs of necessary medical services." Barham by Barham v. Rubin, 72 Haw. 308, 312, 816 P.2d 965, 967 (1991) (citing 42 U.S.C. § 1396). "Medicaid is a cooperative Federal and State program that provides medical assistance to low income persons based on financial need[,]" Fournier v. Sec'y of the Exec. Off. of Health & Human Servs., 170 N.E.3d 1159, 1164 (Mass. 2021) (citation and internal quotation marks omitted), and "is

---

[1] The Honorable Bert I. Ayabe presided.

2

designed to be the payer of last resort, available only when no other source is liable for the expense." Est. of Scheidecker v. Montana Dept. of Pub. Health & Human Servs., 490 P.3d 87, 91 (Mont. 2021) (citation and internal quotation marks omitted). Generally, an individual must have less than $2,000.00 in assets to qualify for Medicaid assistance. See Hawaiʻi Administrative Rules (**HAR**) § 17-1725.1-43; see also Fournier, 170 N.E.3d at 1164; Social Security Programs Operations Manual System at SI 01110.003.A.1, SI 01110.003.A.2 (effective Dec. 8, 2010).

"Through the practice known as Medicaid planning, however, individuals with significant resources devise strategies to appear impoverished in order to qualify for Medicaid benefits." Fournier, 170 N.E.3d at 1164 (citation and internal quotation marks omitted). "One such strategy is to transfer assets into an inter vivos trust, whereby funds appear to be out of the individual's control, yet generally are administered by a family member or loved one." Id. (citation omitted). "Accordingly, a loophole existed under the pre-1986 law, pursuant to which individuals anticipating the need for expensive long-term medical care could impoverish themselves and qualify for Medicaid assistance while preserving their resources for their heirs." Petition of Est. of Braiterman, 145 A.3d 682, 687 (N.H. 2016) (cleaned up).

In 1986, Congress responded to this loophole by enacting 42 U.S.C. § 1396a(k) (1988) (repealed 1993), which

"deemed available to the applicant (the beneficiary) the maximum amount that could, at the trustee's discretion, be distributed to the beneficiary from an irrevocable trust regardless of whether the funds were actually distributed." Braiterman, 145 A.3d at 687 (cleaned up). In other words, Medicaid qualifying trusts "were no longer a permissible means to shelter assets for purposes of Medicaid eligibility." Id. at 688 (citation omitted). "Congress sought to prevent wealthy individuals, otherwise ineligible for Medicaid benefits, from making themselves eligible by creating irrevocable trusts in order to preserve assets for their heirs." Barham, 72 Haw. at 312, 816 P.2d at 967 (citation omitted).

"In 1993, in reaction to the sophisticated instruments used to circumvent the [Medicaid qualifying trust] rules, Congress repealed § 1396a(k) and enacted § 1396p(d) (1993), which was aimed at more effectively curtailing the use of trusts or similar mechanisms to qualify for Medicaid." Braiterman, 145 A.3d at 688 (cleaned up). In that enactment, the Omnibus Budget Reconciliation Act of 1993, "Congress established a general rule that trusts would be counted as assets for the purpose of determining Medicaid eligibility." Id. (citation omitted).

> With respect to an irrevocable trust, the act provides that "if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual, the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual."

Fournier, 170 N.E.3d at 1164 (quoting 42 U.S.C. § 1396p(d)(3)(B)(i)).

B.    **Edward And Florence Fujimori**

In August 2006, Edward and Florence created the "Edward M. and Florence Y.K. Fujimori Irrevocable Trust" (**Trust**) "for the benefit of [their] descendants, by representation," and assigned their son, Alan Y. Fujimori, as trustee (**Son**).  That same day, they funded the Trust with their residential property at 5314 Uhiuhi Street in Honolulu (**Property**), reserving "a life estate in an undivided ten-thousandth (.0001 or 1/10,000) interest in and to" the Property.  (Formatting altered.)

Six years later, in 2012, Son, as trustee, sold the Property for $700,000 to Clint and Lisa Kagami (**Kagamis**), and conveyed the Property by warranty deed.  In the same warranty deed, Edward and Florence conveyed their life estate in the undivided 0.0001% interest in the Property to the Kagamis.  Two checks totaling $666,873.81 ($333,436.90 and $333,436.91) were made payable to the Trust and were deposited into two separate bank accounts belonging to the Trust.

Two years later, in July 2014, Florence applied for Medicaid assistance to pay for her long-term care, which was approved.  In September 2015, Edward applied for Medicaid assistance to pay for his long-term care, and had been given presumptive eligibility beginning December 16, 2015.

In December 2015, DHS requested that Florence provide information to "[v]erify life estate interest in a property." DHS, apparently, requested that Edward also provide more information.

On January 8, 2016, Edward, through the Fujimoris' attorney, responded to DHS' request for more information by stating,

> Since the currents [sic] assets owned by the Irrevocable Trust are not a countable asset to Mr. Fujimori, the current bank statements of the Irrevocable Trust accounts that the Attorney General is requesting is not relevant to the applicant's qualification purposes and infringes on the privacy of the beneficiaries of the trust.

The response further asserted that the Fujimoris "did not keep a right to receive income, so when the trust sold the property in 2012 Mr. and Mrs. Fujimori did not dispose of any income or asset." (Emphasis omitted.)

In April 2016, DHS terminated Medicaid assistance in paying for Edward's and Florence's long-term care effective June 1, 2016, because they did "not meet other program requirements" and their "[a]ssets exceed[ed] eligibility limits." DHS also terminated assistance to Edward because the "[r]equired information was not provided."

Before his Medicaid assistance was set to end, Edward passed away on May 20, 2016. Edward's attorney requested that the administrative hearing proceed, but DHS denied the request because a "power of attorney terminates when the principal dies." Edward's attorney then requested that Medicaid reimburse

6

Edward's estate for the three and one-half months (September 1, 2015 to December 15, 2015) of long-term care Edward paid for while his application was pending, attaching an Affidavit for Collection of Personal Property signed by Son.

DHS held an administrative hearing for Florence in June 2016 and for Edward in August 2016. On August 10, 2016, DHS issued its Notice of Administrative Hearing Decision for Florence's request for Medicaid assistance, concluding that:

> (1) "Under the [HAR], the Fujimori Trust is a 'revocable' trust";
>
> (2) "Even assuming arguendo that the Fujimori Trust is 'irrevocable' for Medicaid purposes, the [Property] was a countable asset of [Florence]"; and
>
> (3) Florence "also individually owned an undivided 1/10,000th interest in a life estate in the [Property]."

(Formatting altered.) A month later, on September 13, 2016, DHS issued its Notice of Administrative Hearing Decision for Edward's request for Medicaid assistance, concluding among other things that:

> (1) "Under the [HAR], the Fujimori Trust is a 'revocable' trust";

> (2) Edward "also individually owned an undivided 1/10,000th interest in a life estate in the [Property] which was valued at $45,099.25"; and
>
> (3) "It is undisputed that [Edward] did not provide the information requested by [DHS] regarding the Fujimori Trust."

(Formatting altered.)

Florence and Edward timely appealed to the circuit court. The circuit court consolidated the cases, and heard oral arguments. Without addressing whether the Trust was revocable, the circuit court held that:

> (1) "The Hearing Officer did not err in concluding [Edward and Florence] had 'full' Life Estate interests in their [Property]";
>
> (2) "[T]he Hearing Officer did not err and properly affirmed [DHS'] denial of benefits to [Edward] for failure to provide requested updated information related to the status of assets in the Fujimori Trust, as required by HAR § 17-1725.1-10(g)"; and
>
> (3) Florence "shall return any and all Aid Paid pending the August 10, 2016 administrative hearing decision, because [DHS] is the prevailing party."

Florence and Edward timely appealed to this court.

## STANDARD OF REVIEW

This court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in Hawaii Revised Statues (**HRS**) § 91-14(g) (2012) to the agency's decision. AlohaCare v. Ito, 126 Hawaiʻi 326, 341, 271 P.3d 621, 636 (2012). HRS § 91-14(g) provides as follows:

> Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
>> (1) In violation of constitutional or statutory provisions; or
>>
>> (2) In excess of the statutory authority or jurisdiction of the agency; or
>>
>> (3) Made upon unlawful procedure; or
>>
>> (4) Affected by other error of law; or
>>
>> (5) <u>Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record</u>; or
>>
>> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

(Emphasis added.) For subsection (5),

> administrative findings of fact are reviewed under the clearly erroneous standard, which requires [the appellate] court to sustain its findings unless the court is left with a firm and definite conviction that a mistake has been made. Administrative conclusions of law, however, are reviewed under the de novo standard inasmuch as they are not binding on an appellate court. Where both mixed questions of fact and law are presented, deference will be given to the agency's expertise and experience in the particular field and the court should not substitute its own judgment for that of the agency. To be granted deference, however, the agency's decision must be consistent with the legislative purpose.

AlohaCare, 126 Hawai'i at 341, 271 P.3d at 636 (citation omitted).

## DISCUSSION

In this secondary appeal, the Fujimoris challenge the circuit court's holdings affirming (1) the finding that the Fujimoris had a full life estate, (2) that Florence reimburse DHS for aid paid pending the decision in her case, and (3) the denial of Edward's application for failing to provide information.[2]  Because the circuit court did not err in affirming DHS' decision, we too affirm.

## A.   Transfer Of Life Estate For Less Than Market Value

First, Edward and Florence argue that the "circuit court clearly erred in affirming the hearing officer's finding that [they] had a full life estate interest in the [Property]" and that the Hearing Officer clearly erred because he "ignored the plain language of the August 17, 2006 deed as to the reservation of the small fractional interest" in the Property.

### 1.   Medicaid and life estates

Again, Medicaid is for the needy and is meant to be the payer of last resort.  Fournier, 170 N.E.3d at 1164; Est. of

---

[2]  The Fujimoris raise a fourth point of error, contending that the "circuit court erred in failing to reverse the hearing officer's conclusions that the Fujimori Trust is revocable and that the Fujimoris therefore had access to the Trust's assets and were ineligible for benefits."  Edward's failure to provide information and the fact that the fair market value of the life estates exceeded Medicaid limits were sufficient to affirm the hearing officer's (**Hearing Officer**) decisions.  Therefore, the circuit court did not err by deciding on those grounds and declining to rule on whether the Trust was revocable.

Scheidecker, 490 P.3d at 91.  As such, Congress made clear that a State's plan must provide that an individual is ineligible for medical assistance if that institutionalized individual or spouse "disposes of assets for less than fair market value on or after the look-back date . . . ."  42 U.S.C. § 1396p(c)(1)(A) (2013).

Hawaiʻi thus requires that an individual applying for long-term care assistance

> shall be assessed a penalty period for coverage of these services if the individual or the individual's spouse, transferred an asset for less than fair market value within the applicable look-back period.  The length of the look-back period shall be sixty months for an asset transferred on or after February 8, 2006.

HAR § 17-1725.1-51(a).  "The transfer provision shall apply to an asset held by the individual and the individual's spouse when any action is taken that reduces or eliminates such individual's ownership or control of such asset."  HAR § 17-1725.1-51(c).

An "'Asset' means cash and any other personal property, as well as real property, that an individual or family:  (1) Owns; (2) Has the right, authority, or power to convert to cash (if not already cash); and (3) Is not legally restricted from using for the individual's or family's support and maintenance."  HAR § 17-1700.1-2 (formatting altered).  "In a transaction involving a life estate, a transfer of assets is

11

involved."  Centers for Medicare & Medicaid Services, *State Medicaid Manual* § 3258.9.[3]

A life estate is "the value of a property that is allocated between the life tenant and the remainderman."  HAR § 17-1700.1-2.  The life tenant is "a life estate holder who is entitled to certain property rights and the right to reside on the property for the duration of the holder's life or the life of another."  HAR § 17-1700.1-2.  "The life tenant:  (A) Owns the physical property for the duration of the life estate; (B) Has the right to possess, use, and obtain profits from the property; (C) Can sell his or her life estate interest; but (D) Cannot take any action concerning the interest of the remainderman."  HAR § 17-1725.1-34(f)(3) (formatting altered).

The remainderman is "an individual who is given a remainder interest in a property which he or she will inherit upon the death of the life estate holder."  HAR § 17-1700.1-2.

> The remainderman:  (A) Has ownership interest in the physical property; (B) Does not have the right to possess and use the property until termination of life estate; and (C) Unless restricted by will or deed, is able to sell his or her interest in the physical property before the life estate interest expires but the market value of the remainder interest may be reduced as the sale is subject to life estate interest.

HAR § 17-1725.1-34(f)(4) (formatting altered).

> The current value of the property shall be allocated between the life tenant and the remainderman by determining the present worth of their respective interest using the Life Estate and Remainderman Interest Table (26 C.F.R. § 20.2031-7 and 49 FR Vol. 49 No. 93/5-11-84), that corresponds to the age of the life tenant[.]

---

[3]  The State Medicaid Manual can be found at: https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Paper-Based-Manuals-Items/CMS021927 (last visited: Aug. 25, 2022).

HAR § 17-1725.1-34(f)(2). A transfer of a life estate "is for less than fair market value whenever the value of the transferred asset is greater than the value of the rights conferred by the life estate." Centers for Medicare & Medicaid Services, *State Medicaid Manual* § 3258.9 (emphasis added).

### 2. Edward's and Florence's life estate

Here, Edward and Florence reserved a life estate in an undivided 0.0001% interest in and to the Property when they transferred the Property to the Trust by warranty deed. Thus, the life estate existed independent of the Trust. Florence in 2014, and Edward in 2015, applied for Medicaid assistance to pay for their long-term care. Since Florence and Edward transferred their life estate to the Kagamis in 2012, the transfer of that asset falls within the five-year look-back period. HAR § 17-1725.1-51(a). DHS was thus obligated to determine whether the transfer of Florence's and Edward's life estate to the Kagamis was for less than fair market value. See generally 42 U.S.C. § 1396p(c)(1)(A); HAR § 17-1725.1-51(a). The dispute in this case centers around the phrase "ten-thousandth (0.0001 or 1/10,000) interest in and to" the Property. (Formatting altered.)

In applying for Medicaid assistance to pay for her long-term care, Florence represented the value of her life estate in the Property as worth $8.06 by calculating as follows:

| | |
|---:|---|
| $546,000.00 | Property tax assessed value |
| x  .29526 | Life estate factor |
| $161,211.96 | Full value |
| **x  0.0001** | **Percentage of interest in Property** |
| $16.12 | Adjusted life estate value |
| ÷     2 | Adjusted for joint life tenant with Edward |
| $8.06 | Florence's proposed life estate value |

Accounting for his life estate factor, Edward similarly calculated the value of his life estate at $7.04.  Apparently taking issue with these low valuations, the Hearing Officer considered the circumstances surrounding the transfers of the Property to assess the value of Florence's and Edward's life estate.

As to using the tax assessed value as the "fair market" value, the Hearing Officer found that "[b]ecause [the Property] was sold for $700,000.00, there [was] no reason for using the tax assessed value of $546,000."  The Fujimoris do not appear to challenge the Hearing Officer's use of the sales price.  They merely assert that "[e]ven when using the $700,000 fair market value as a starting point, [Florence] could only have received, at most, $10.33, and [Edward] could only have received, at most, $9.02."

As to reducing the value of the life estate to 0.0001% of the full value, the Hearing Officer found that "only [Florence and Edward] had an interest in the life estate of [the

14

Property] and that no other person or persons received an undivided interest in the Life Estate of [the Property]." Although the Fujimoris challenged this finding, they fail to cite to where evidence was adduced showing that there was another life tenant holding a life estate in the Property.

Indeed, the record shows that the Fujimoris transferred the Property into the Trust with Son as trustee, reserving a life estate, albeit in a 0.0001% interest to the Property. The deed to the Property shows only Florence and Edward as reserving a life estate, no one else. Significantly, there was no evidence in the record that Florence and Edward's right to enjoy the entire Property as life tenants was somehow diminished or restricted by holding a life estate in only a 0.0001% interest to the Property. And, it seems implausible that the Kagamis would purchase the Property for $700,000 encumbered by a life estate in the other 99.9999% interest in the Property. Thus, the Hearing Officer's finding that only Florence and Edward held a life estate to the Property was not clearly erroneous.

The Hearing Officer further found that one of the reasons for establishing a life estate in 0.0001% interest of the Property was explained by the Fujimoris' attorney as,

> most importantly, the value of your life estate share is so small that even if the law were to change to accommodate the Attorney General's new position regarding collecting liens against life estates, you could buy out that piece of life estate and pay off the Medicaid lien for under $50 in most cases – no matter how big the lien amount is.

The Fujimoris did not challenge this finding, and this finding goes directly to the purpose of establishing such a life estate in the Property–to evade a large Medicaid lien.

The Fujimoris' application of a 0.0001% adjustment in calculating the value of their life estate was a mathematical manipulation of the Medicaid program, a program meant to help the most needy in our community. See Fournier, 170 N.E.3d at 1164; Est. of Scheidecker, 490 P.3d at 91. DHS was duty bound to uphold the law and fulfill the purposes of the Medicaid program and, thus, was obligated to assess the true nature of the Fujimoris' life estate. HRS § 346-14(7) (2015) (providing that DHS shall "[a]dminister the medical assistance programs for eligible public welfare and other medically needy individuals by establishing standards, eligibility, and health care participation rules, . . . systems to monitor recipient and provider compliance, and assuring compliance with federal requirements to maximize federal financial participation").

Accordingly, we hold that the circuit court did not err by affirming the Hearing Officer's decision because, based on the circumstances in this particular case, Edward and Florence improperly attempted to diminish the value of their life estate to qualify as individuals in need of Medicaid assistance.

**B.     Reimbursement For Assistance Pending The Decision**

The Fujimoris argue that because DHS erred in denying Florence's benefits, she need not reimburse DHS "for any aid paid pending the August 10, 2016 Administrative Hearing Decision in her case."

HAR § 17-1703.1-17(a) provides that "[a]id paid pending a hearing decision from the date aid paid pending begins through the ninetieth (90th) day shall be recoverable by the department if the department's action is sustained."  DHS identified the period pending as June 1, 2016 through August 10, 2016, a little over two months.

The Hearing Officer calculated the value of Florence's life estate as follows:

| | |
|---|---|
| $700,000.00 | Property sales price |
| x  .29526 | Florence's life estate factor |
| $206,682.00 | Full value of Florence's interest |
| ÷       2 | Adjusted for joint life tenant with Edward |
| $103,341.00 | Value of Florence's life estate in 2012 |

Based on this calculation, the Hearing Officer concluded that Florence "was not fairly compensated for her [0.0001%] undivided interest in a life estate" of the Property, and that the fair market value of her life estate in 2012 was $103,341.00, and not $8.06.  Based on the record, this calculation fairly reflects the value of Florence's life estate in the ($700,000.00) Property, and was not clearly erroneous.

Because Florence transferred her life estate within the look-back period, the life estate value exceeded $2,000.00, and the aid paid pending the decision was within ninety days of the decision, we hold that the circuit court did not err by affirming the Hearing Officer's decision requiring Florence to return the Medicaid assistance paid pending the administrative hearing decision.

## C.   Failure To Provide Information

Edward does not dispute that DHS requested information, and that he refused to provide the requested information.  Edward, instead, argues that "[b]ecause assets in the Fujimori Trust did not belong to [him, DHS] should not have denied his application for benefits for failure to provide information regarding the amount of assets belonging to the Trust."  Edward insists that the information requested was "irrelevant" because "the Trust's bank accounts are not part of the universe of assets to be considered," and that DHS "does *not* have a right to request information regarding assets in the Fujimori Trust."

Trusts and life estates may affect an individual's Medicaid eligibility.  HAR §§ 17-1725.1-18 and 17-1725.1-34(f).  As an applicant seeking Medicaid assistance to pay for his or her long-term care, "[a]n individual shall apply for and develop potential sources of assets, when applicable."  HAR § 17-1725.1-10(a).  And DHS "shall deny or terminate medical assistance when

an individual fails to . . . [c]ooperate in providing accurate and complete information or verification[.]"  HAR § 17-1725.1-10(g)(2).

Importantly, "[r]eal property which is considered the home or usual place of residence of the individual is generally exempt from consideration as a countable asset," subject to some terms and exceptions.  HAR § 17-1725.1-36(a).  Cash in a bank account, however, "shall be considered in the personal reserve" of the individual.  HAR § 17-1725.1-17(2).  In a revocable trust, "[t]he corpus of the trust is considered an available asset[.]"  HAR § 17-1725.1-18(d)(1).  In an irrevocable trust, there are circumstances under which funds can be considered an available asset.  HAR § 17-1725.1-18(e).  A trust is irrevocable only when its "term and conditions cannot be amended under any circumstances, including a court order."  HAR § 17-1700.1-2.

Here, the Trust transferred the Property and Edward transferred his life estate to the Kagamis in 2012, effectively converting these assets into cash.  This conversion occurred within the five-year look-back period of Edward's 2015 application for Medicaid assistance.

Accordingly, at the time of his application, DHS was obligated to determine whether the cash was an asset available to Edward.  HRS § 346-14(7); HAR §§ 17-1700.1-2, 17-1725.1-17(2), 17-1725.1-18(d)(1).  Necessary to that determination would be an inquiry as to whether the Trust was irrevocable for

19

purposes of qualifying for Medicaid assistance and whether the life estate was transferred for less than its fair market value. HAR §§ 17-1700.1-2, 17-1725.1-18(e). Thus, the circumstances surrounding the 2012 transfer of the Property and Edward's life estate were relevant to determining whether Edward was eligible for Medicaid assistance.

We thus hold that the circuit court did not err in affirming the Hearing Officer's decision denying Edward's application for failing "to provide requested updated information related to the status of assets in the Fujimori Trust, as required by HAR § 17-1725.1-10(g)."

Based on the foregoing, we affirm the circuit court's April 26, 2017 "Order Affirming Administrative Hearing Decisions Dated August 10, 2016 and September 13, 2016" and May 11, 2017 "Judgment on Appeal of Hearing Officer's Decisions."

| | |
|---|---|
| On the briefs: | /s/ Keith K. Hiraoka<br>Presiding Judge |
| Gregory W. Kugle<br>Christopher J.I. Leong<br>(Damon Key Leong Kupchak<br>Hastert),<br>for Appellants-<br>Applicants/Appellants. | /s/ Karen T. Nakasone<br>Associate Judge<br><br>/s/ Sonja M.P. McCullen<br>Associate Judge |
| Ruth K. Oh,<br>Deputy Attorney General,<br>for Appellees-Appellees. | |